Argued June 12, reversed and remanded September 6, 1957

# BORGLUND *v.* WORLD INSURANCE CO.

315 P. 2d 158

*Gladys M. Everett,* Portland, argued the cause and submitted a brief for appellant.

*Norman B. Kobin,* Portland, argued the cause for respondent. With him on the brief was Leo Levenson, Portland.

Before PERRY, Chief Justice, and ROSSMAN, LUSK and WARNER, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, Andrew Borglund, and a cross-appeal by the defendant, World Insurance Company, from a judgment which the circuit court rendered after it had entered findings of fact and conclusions of law. The action that led to the double appeal was based upon a policy of disability benefit insurance issued by the defendant to the plaintiff March 10, 1948, and an accident with which the plaintiff met April 4, 1952. As a result of the accident the plaintiff's left leg was amputated above the knee, leaving only an eight-inch stub. Concisely stated, the complaint alleges that Parts 4 and 12 of the policy determine the indemnity which is payable. The defendant contends that the sum payable is governed by Part 1. We will later quote Parts 1, 4 and 12. The circuit court held that Parts 1 and 12, and not 4, govern the case and awarded judgment accordingly. The actual sums awarded were $333.33 under Part 1 and $300 under Part 12. The court also awarded $700 as an attorney fee under ORS 736.325.

Neither party, upon appeal, challenges the award of $300 which was made under Part 12. The plaintiff, in appealing, contends that for the loss of his leg he should have been paid the amount promised by Part 4 ($70 per month for 24 months). The de-

fendant, by its cross-appeal, challenges only the part of the judgment which granted the plaintiff $700 as an attorney fee. It terms that award "grossly excessive for obtaining a benefit of $300 more than was tendered."

When the policy was issued March 10, 1948, Part 1 provided that if the insured lost "either foot" the company would pay him $833.33 and Part 4 promised that if he sustained a disability for which no specific sum was prescribed, the company would pay $100 per month during the disability, but not for more than 24 months. April 1, 1951, after the plaintiff had changed his occupation, a rider was attached to the policy which reduced the benefits to $333.33 for the loss of a foot and $70 per month for a period of not more than 24 months for a loss for which the policy scheduled no specific amount.

The following are the pertinent parts of the policy when effect is given to the rider:

Part 1:

"If the insured sustains such injury which directly and independently of sickness and all other causes, * * * and result in any of the following specific losses within ninety days from the date of such accident, the Company will pay:

"For loss of Either Hand of [sic] Either Foot —$333.33."

Part 2:

"Loss in every case referred to in the above schedules in Parts One and Two for dismemberment of hands and feet shall mean complete severance at or above the wrist or ankle joint respectively * * *. Only one of the amounts named in Parts One and Two (the greatest) will be paid for injuries resulting from one accident, and shall be in lieu of all other indemnity."

Part 4:

"If such injury does not result in any of the above mentioned specific losses but shall wholly and continuously disable the Insured for one day or more, the Company will pay indemnity * * * ($70.00) per month for the period of such disability, but not exceeding twenty-four (24) months."

Part 12:

"If the Insured, on account of such injury or such sickness, shall be removed to a lawfully operating public hospital, the Company will pay an additional indemnity of such hospital confinement, at the rate of One Hundred ($100.00) Dollars per month, for the period of continuous confinement therein, not exceeding three consecutive months."

The challenged judgment, as we have pointed out, awarded indemnity under Parts 1 and 12. The defendant does not challenge those awards. The plaintiff argues that Part 4, and not Part 1, should have been the basis of the award of indemnity for the loss he sustained.

We have mentioned the fact that as a result of the accident the plaintiff's left leg was severed at a point above the knee. Thereby he sustained the loss, not only of the left foot, but also of the left calf, knee and the major part of the thigh. The fragment of his left leg which remained was, we assume, virtually useless. *Moore v. Aetna Life Insurance Co.,* 75 Or 47, 146 P 151. The plaintiff calls attention to the fact that the policy does not expressly mention limbs and contains no provision offering specific indemnity for the loss of a leg or an arm. He argues that "a 'leg' is not one of the losses specified in Part One of the policy" and that the award should have been made under Part 4 which governs unscheduled losses. Part

4 speaks of an injury which "does not result in any of the above mentioned specific losses." The defendant contends that the plaintiff's injury resulted in one "of the above mentioned specific losses" and calls attention to the fact that Part 2, in limiting payment for the dismemberment of a hand or a foot, says: "Dismemberment of hands and feet shall mean complete severance at or above the wrist or ankle joint respectively." The provision just mentioned continues in this vein: "Only one of the amounts named in Parts One and Two (the greatest) will be paid for injuries resulting from one accident and shall be in lieu of all other indemnity."

The question presented is this: Was the loss which the plaintiff sustained that of a foot, as that member is defined in Part 2, or was it an injury for which the policy designates no particular indemnity.

■ Policies of insurance of the type now before us have been construed by the courts of other jurisdictions. They have not received uniform interpretation, although in each instance the court's sole purpose was to give effect to the policy's language. Some courts found the terms of the policy, when applied to injury such as this plaintiff's, sufficiently ambiguous to warrant resort to the rule that ambiguities should be construed against their author—the insurer. Other courts found no ambiguity in the policy.

At the outset we take note of *Kinard v. Mutual Benefit Health & Accident Assn.*, 108 F Supp 780, which held that policy clauses, such as the one before us, which stipulate that indemnity for a designated loss should be in lieu of all other indemnity are intended to prevent double recovery for injury inflicted in a single accident, but do not prevent the insured from recovering the maximum amount promised by

the policy merely because a part of his loss consisted of an injury for which the policy scheduled a smaller sum. In that case, the insured, in a single accident, lost an eye and also sustained a brain injury. The latter wholly and continuously disabled him. The policy entered as the maximum indemnity for the loss of an eye $1,500, and the insurer claimed that the plaintiff could recover no more than that sum. The policy also provided: "If the Insured, because of such injuries which do not result in any of the above mentioned specific losses, shall be wholly and continuously disabled and under the professional care" of a physician, the insurer would pay him $200 per month for a prescribed period. It was undisputed that the insured's brain injury, independently of the loss of the eye, wholly and continuously disabled him. The court held that he was entitled to recovery under the part of the policy which promised indemnity at a monthly rate. It said:

"Here, plaintiff received a brain injury which wholly and continuously disabled him, independently of the loss of one eye. But defendant asserts that since plaintiff lost an eye in the same accident his recovery is limited to the lesser sum for the loss of the eye. Before the Court would be justified in reaching such a conclusion, the intention of the parties as expressed in the policy would have to clearly appear.

"The Court feels that the most logical construction of the policy, especially in view of the very purpose of indemnity insurance, is as follows:

"The provision in the policy that recovery for the loss of an eye (or other specific losses) 'shall be in lieu of all other indemnity,' means that the indemnity thus provided is the only amount which can be recovered for disability resulting from the *loss of one eye*. This provision is not a limitation of recovery for other wholly and continuously dis-

abling injuries to other parts of the body, although received in the accident."

Accordingly, in the present instance, if the plaintiff's loss should be deemed that of a leg, his recovery is not confined to the amount scheduled in the policy for a foot merely because the policy prescribes an amount payable to the insureds who suffer such a loss.

We will now take note of some of the decisions which determined the precise issue debated in the briefs; that is, whether the policy's phrase "at or above the * * * ankle" exacts a holding that the plaintiff lost only a foot.

■ *National Life & Accident Insurance Co. v. Davies,* 34 Ala App 290, 39 So2d 697, certiorari denied 252 Ala 107, 39 So2d 703, deemed that the case presented a problem of construction, and began in this way:

> "The policy should be construed according to its character and its beneficent purposes, and in the sense in which the insured had reason to suppose it was understood. It is not a question of what the words contained in the contract literally or figuratively mean, but instead what was their intended meaning when taken in connection with their use in the instrument."

The court held that the insured, who lost both legs above the knee, was not confined to the part of the policy which made a specific award for loss of a foot, but was entitled to resort to the part which promised indemnity at a specific rate per week during the period of disability. It reviewed decisions of other courts in similar cases and acknowledged:

> "To take it literally, of course, it could include a severance even at the hip joint."

It then continued:

> "But we are enjoined against a technical or literal construction of the language of the policy. It is clear that in its common, accepted meaning and use we do not speak of the portion of the leg above the ankle as the foot.
>
> "To hold that severance of both legs above the knee joints should be taken to mean only the loss of the feet would in effect destroy to a great extent some of the beneficent benefits of the policy. If the contracting parties had intended or contemplated that the description of the member should be so included, this could have been done by a more specific description or explanation."

The view to the contrary is represented by *Bates v. Inter-Ocean Casualty Co.,* 126 WVa 620, 29 SE2d 469. The policy involved in that case provided that for the loss of one hand or one foot the insured would be paid $200. As a result of an accidental injury one of his legs was amputated at a point four inches above the knee. The policy also provided that during the period in which an injury wholly disables the insured, the insurer would pay $10 per week. The majority reasoned:

> "The policy in question specifically covers loss by accident of certain parts of the body, and disability resulting from accident. There seems to be no general coverage under its provisions relating to loss of a member of the body. The coverage is entirely specific and only the provision applying to the loss of a foot covers the loss of a leg. There is no additional coverage for the entire or partial loss of a leg or an arm. * * * The loss of a foot is specified in Part I. Unfortunately, there is no provision of the policy which insures against his additional loss."

It will be observed that the court acted under a belief that "The coverage is entirely specific." It also said

"There seems to be no general coverage." The dissenting justice took the view that the policy's provision requiring severance at or above the ankle was included to make certain that the specific sum would not have to be paid for the partial loss of a foot. He declared:

> "I do not construe the provisions for specific loss to cover injuries which go far beyond the loss of a foot. I think in such circumstances Part II, under the head 'Weekly Accident Indemnity' can be invoked and that the insured is entitled to be paid the weekly indemnity rate for a period not exceeding fifty-two weeks. I take this position because I think it settled law that the policy in question should be construed most strongly in favor of the insured plaintiff."

The defendant places reliance upon *Kennedy v. National Accident & Health Insurance Co.* (Mo App), 76 SW2d 748, and, concerning the severance involved in that case, says it occurred "four inches above the knee." The complaint in that case, as reported in the decision, alleged that "it became necessary to amputate plaintiff's right foot between the knee and ankle." According to the decision, "The evidence disclosed a direct, specific and total loss of his right foot by severance at or above the ankle." Evidently the defendant failed to read the decision with care. The court held that, since the plaintiff's loss was within the clause of the policy which granted a specific sum for loss of a foot when the serverance occurred at or above the ankle, the plaintiff could not resort to the provision for indemnity by weekly payment. The third decision which the defendant expressly cites is *Van Glider v. Kingsberry,* 65 Colo 255, 176 P 319. It held that the insured, who lost a foot by severance at the place mentioned in the policy, was entitled only

to the amount prescribed for the loss of a foot, and not also to the periodic payments mentioned in the policy during the time of his disability. The decision does not determine whether or not, in an instance such as the one before us, the loss of a leg must be held to be the loss of a foot.

In *Nelson v. Great Northern Life Insurance Co.,* 253 Mich 351, 235 NW 180, the court said:

"So, in the instant case, the plaintiff did not lose a hand within the meaning of part A of the policy. He lost an arm for which no provision was made in the schedule enumerating indemnity for specific losses. Therefore he is not barred by the policy from recovering for total disability."

In *Kangas v. Standard Accident Insurance Co.,* 138 Minn 418, 165 NW 268, LRA 1918B 504, Part 1 of the policy named as its "principal sum" $100 and in Part 2, under the heading of "Specific Losses," specified:

"(b) For loss of both hands or of both feet or of one hand and one foot (all by complete severance at or above the wrist or ankle), or * * * —The principal sum.

"(c) For loss of either hand or of either foot (by complete severance at or above the wrist or ankle)—One-half of the principal sum."

Part 3 of the policy, which bore the heading "Monthly Accident Indemnity," read:

"Indemnity under this part shall not be paid for any disability resulting from loss for which provision is made in Part II. (a) Total Disability —If such injury as heretofore described alone shall immediately and continuously disable and prevent the insured from performing any and every duty pertaining to his occupation or business, the monthly accident indemnity as provided in Part I will

be paid for the period of such disability, not exceeding forty-eight consecutive months."

Part I specified as the amount of the monthly accident indemnity the sum of $40. The insured met with an accident which necessitated the immediate amputation of all the fingers of his right hand and his left arm near the shoulder. He was totally and permanently disabled. We now quote from the decision:

> "It is also argued that indemnity under Part III should not be paid for any disability resulting from loss for which provision is made in Part II. The difficulty with this contention is that in the case at bar the loss is the entire left arm and the fingers of the right hand. We fail to discover, under the head of specific losses, any reference to such a loss. We do, however, find provision for indemnity for total disability in paragraph (a) of Part III, which provides a monthly accident indemnity of $40 for the period of disability not exceeding 48 consecutive months.

> "Suppose, instead of losing the fingers of his right hand, respondent had, in addition to the loss of his left arm, sustained an injury to his spine which produced an immediate and total paralysis of the lower part of his body and destroyed the use of both feet. An accident policy which would not, in such a case, afford indemnity for the whole loss would be a delusion and a snare."

The court held that the insured was entitled to recover the monthly indemnity payments.

The foregoing will suffice as a review of the decisions found in the books which are germane to the issues of this appeal.

The ultimate problem presented by this case is one of classification; that is, it requires the court to determine into which of the several categories found in the policy the plaintiff's loss belongs. Before at-

tempting to make the determination, we take note of the fact that the policy seemingly undertakes to provide indemnity for any loss (sickness or accident) which an insured may suffer. Since it does not undertake to furnish the same indemnity for all losses, regardless of kind and cause, it deals with the subject of indemnity in more than one part (paragraph). Part One, entitled "Specific Losses," sets forth the amount of indemnity which the insured shall receive if his loss is incurred by accident and fits into any one of the categories enumerated by that part. The categories, eight in number, are: Life; Both Eyes; Both Hands; Both Feet; One Hand and One Foot; Either Hand; Either Foot; Either Eye.

Since it is agreed that the plaintiff's injury must find its classification in either Part One (material part just mentioned) or in Part Four, we will not review other portions of the policy but will take note now of Part Four. It is general in its terms as has already been observed. The pertinent words are: "If such injury does not result in any of the above mentioned specific losses but shall wholly and continuously disable the Insured". The injury which the plaintiff suffered "wholly and continuously" disabled him during the period for which he seeks indemnity.

The words "Either Foot" are not ambiguous; everyone became familiar with their meaning when he first learned to walk. The accompanying phrase, "dismemberment of hands and feet shall mean complete severance at or above the wrist or ankle joint, respectively," was included in the policy to make it clear that no indemnity for the loss of a foot was payable unless the entire foot "at or above the * * * ankle joint" was taken. The provision was intended to offset decisions such as *Moore v. Aetna Life Insurance*

*Co.,* supra. Unless one ascribes to the defendant evil designs, it is clear that the phrase was not intended to indicate that for the purposes of the policy a leg would be deemed a foot. We do not think that the words of Part Four which are pertinent to this case and which read: "If such injury does not result in any of the above mentioned specific losses but shall wholly and continuously disable the Insured" are ambiguous. So far as we can discern from the briefs, neither party has experienced any difficulty with those words.

■ Accordingly, the policy affords a choice of only two categories into which the plaintiff's loss can be cast. We must either say that his loss of a leg was the loss of "either foot" as that term appears in Part 1, or that it was an injury which did not "result in any of the above mentioned specific losses" as that phrase is employed in Part 4. We experience no difficulty whatever in concluding that his loss did not consist merely of "either foot." His loss was that of a leg. The "specific losses" set forth in Part 1 made no provision for such a loss and, therefore, he is entitled to indemnity under Part 4. It is our belief that the circuit court erred when it applied Part 1 and not Part 4. The plaintiff was also entitled to the hospital benefit, $300, which was awarded.

■ The defendant, as we have said, complains because the sum of $700 was granted as an attorney fee and argues that the amount was excessive. It was large, but we cannot say that the circuit court abused its discretion when it made the award.

The judgment of the circuit court is reversed. The cause will be remanded so that it may enter judgment in accord with the above.