Argued June 4, affirmed as modified September 11, 1970,
petition for rehearing denied October 13, 1970

HARDWARE MUTUAL CASUALTY COMPANY,
*Appellant and Cross-Respondent, v.* FARMERS
INSURANCE EXCHANGE ET AL, *Respondents
and Cross-Appellants.*
474 P2d 316

*Donald J. DeFrancq*, Portland, argued the cause for appellant and cross-respondent. With him on the briefs were Davis, Jensen, Martin & Robertson.

*Leo Levenson*, Portland, argued the cause for respondents and cross-appellants. With him on the brief were Schoube & Cavanaugh and Frank M. Ierruli.

McALLISTER, J.

This is a declaratory judgment proceeding brought by Hardware Mutual Casualty Company to determine whether it is liable for certain personal injury and wrongful death claims under a liability policy issued by it to World Wide Dodge, Inc., a Portland auto-

mobile dealer. The trial court, sitting without a jury, found that Hardware was liable and Hardware appeals.

The controlling facts were stipulated. Hardware, on March 10, 1964, issued to World Wide Dodge a Combination Comprehensive Liability policy, F 80-356 A, with personal injury limits of $250,000 per person and $500,000 per accident. On December 12, 1964, while Hardware's policy was in force, the defendant Douglas A. Bonsor was involved in an accident while driving a car rented from World Wide Dodge for Bonsor's use while his own car was being repaired by World Wide. The defendant Grace J. Beliel was injured in the accident and a passenger in her car, Charles Sanders, Jr., was killed.

At the time of the accident Bonsor was the named insured in a liability policy issued to him by defendant Farmers Insurance Exchange with personal injury limits of $10,000 per person and $20,000 per accident. Bonsor was covered under this policy while driving a "substitute automobile."

Within a reasonable time Bonsor notified both Hardware and Farmers of the accident. Hardware denied all liability.

Thereafter Grace Beliel sued Bonsor in the Circuit Court for Multnomah County. Farmers defended Bonsor after Hardware had refused a tender of the defense. Beliel recovered judgment against Bonsor for $75,000 plus $162.50 costs. Farmers paid $10,162.50 in partial satisfaction of the judgment.

The Sanders estate also made a claim against Bonsor for damages for wrongful death. Farmers settled this claim for $9,150, which Hardware concedes was a reasonable settlement.

Farmers demanded that Hardware pay Hardware's pro rata share of the amounts paid by Farmers to Beliel and the Sanders estate. Bonsor demanded that Hardware pay the unsatisfied portion of the Beliel judgment against him. Hardware refused all of these demands.

Hardware contends that it is not liable for the Bonsor accident under the terms of its policy issued to World Wide Dodge and that if it is liable its pro rata share of the loss is only 5/15 up to a maximum of $5,000 for each injury.

Defendants contend that Bonsor was covered by Hardware's policy and that Hardware's pro rata share of the loss was correctly determined by the trial court to be 25/26. The defendants Beliel and Bonsor contend on cross appeal that they are entitled to recover attorneys' fees from Hardware.

Hardware's policy consists of a collection of endorsements superimposed on a Combination Comprehensive Liability policy which is largely superseded by the endorsements. The complex task of analyzing the policy is alleviated in part by the parties' concession that Hardware's liability depends on the provisions of three endorsements, one entitled "GARAGE (PREMISES—OPERATIONS—AUTOMOBILES)" F80-A1323; one entitled "LIMITED COVERAGE FOR CERTAIN INSUREDS" F80-A972; and another entitled "CUSTOMER RENTAL ENDORSEMENT" F 80-165B. The first two endorsements were attached to the policy when it was issued on March 10, 1964. The Customer Rental Endorsement was added to the policy on July 14, 1964, for an added premium.

Since the basic insuring agreements are con-

tained in the Garage Endorsement we reproduce the pertinent portions as follows:

## "INSURING AGREEMENTS

*"Coverage A—Bodily Injury Liability*

*"Coverage C—Property Damage Liability*

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. bodily injury or

"C. property damage

to which this endorsement applies, caused by accident and arising out of the garage operations hazard and the automobile hazards; and the company shall have the right and duty to defend any suit against the insured seeking damages payable under the terms of this endorsement, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.

*"Garage Operations Hazard*

"The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary thereto, hereinafter called 'garage operations.'

*"Automobile Hazards*

*"All Automobiles*

"(a) The ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations, and

"(b) The ownership, maintenance or use of any automobile owned by the named insured while

furnished for the use of (i) the named insured, a partner therein, an executive officer thereof or, if a resident of the same household, the spouse of any of them, or (ii) any other person or organization to whom the named insured furnishes automobiles for their regular use."

It will be noted that the hazards insured against are divided into two classes, namely, "Garage Operations Hazard" and "Automobile Hazards". It should be further noted that the Automobile Hazards are divided into two classes: (a) automobiles used for the purpose of garage operations, and (b) automobiles furnished for the use of other described persons or organizations. These subdivisions of the hazards insured against will be referred to later.

The Garage Endorsement specifically excluded coverage for any automobile rented to others.[1] However, an endorsement was added to the policy on July 14, 1964, reading in pertinent part as follows:

"CUSTOMER RENTAL ENDORSEMENT
"IN CONSIDERATION OF AN ADDITIONAL PREMIUM TO BE DETERMINED AT AUDIT, IT IS AGREED THAT SUCH INSURANCE AS IS AFFORDED BY THE GARAGE (PREMISES — OPERATIONS — AUTOMOBILES) ENDORSEMENT ATTACHED TO THIS POLICY FOR BODILY INJURY LIABILITY—AUTOMOBILE; FOR PROPERTY DAMAGE LIABILITY—AUTOMOBILE; AND FOR AUTOMOBILE

---

[1]

"EXCLUSIONS
"The insurance afforded by this endorsement does not apply:
* * * * *
"(c) to any automobile * * * (2) while rented to others by the named insured unless to a salesman for use principally in the garage operation of the named insured, * * *."

MEDICAL PAYMENTS APPLIES WITH RE-
SPECT TO ANY AUTOMOBILE WHILE
RENTED TO A CUSTOMER OF THE NAMED
INSURED WHILE SUCH CUSTOMER'S AUTO-
MOBILE IS TEMPORARILY LEFT WITH THE
NAMED INSURED FOR SERVICE, REPAIR
OR SALE."

The trial court found that Bonsor was covered by Hardware's policy under Automobile Hazards (b) (ii) as a person to whom World Wide Dodge furnished an automobile for "regular use." As a result of this holding the briefs are devoted primarily to arguing whether Bonsor's use of the rental automobile was a regular or temporary use. We think that Bonsor was covered in either event and find it unnecessary to decide whether the automobile was furnished to Bonsor for his regular use within the meaning of Automobile Hazards (b) (ii).[2]

The Customer Rental Endorsement was not intended to delete from the policy the exclusion of coverage for any automobile "while rented to others by the named insured." It rendered inapplicable the rental exclusion only under the specific circumstances described in the Customer Rental Endorsement, namely, "with respect to any automobile while rented to a customer of the named insured while such customer's automobile is temporarily left with the named insured for service, repair or sale." But the Customer Rental Endorsement did more than render inapplicable the

---

[2] Our decision in Wallace Co. v. State F. M. Auto. Ins. Co., 220 Or 520, 349 P2d 789 (1960) would indicate that it was not. We held there that the words "furnished for regular use" meant the opposite of "for temporary use." The fact that we find it unnecessary to decide whether the car in this case was furnished for Bonsor's regular use does not imply any doubt of the correctness of our decision in *Wallace*.

rental exclusion under specified circumstances. The Customer Rental Endorsement, for an additional premium, unequivocally provided coverage under the Garage Endorsement to any automobile rented to a customer while the customer's automobile was being repaired. The Customer Rental Endorsement covered a rented automobile only when rented for a single specified purpose and for a temporary period of time.

It is not necessary that the customer rental arrangement qualify for inclusion in any of the original classifications of Automobile Hazards as contained in the Garage Endorsement. The Customer Rental Endorsement provides additional coverage whether previously provided by the Garage Endorsement or not. The Customer Rental Endorsement may be construed to amend paragraph (b) of Automobile Hazards by adding a third classification, designated (iii), or to add a third paragraph, designated (c), describing the coverage provided for automobiles "while rented to a customer of the named insured while such customer's automobile is temporarily left with the named insured for service, repair or sale."

The critical question is whether the coverage provided by the Customer Rental Endorsement falls under paragraph (a) or paragraph (b) of Automobile Hazards, or under a new classification as suggested above. The question is critical because the Limited Coverage Endorsement limits the coverage under paragraph (a) of Automobile Hazards to 5,000/10,000 dollars,[9] whereas, if paragraph (a) is not applicable, the full policy limits of 250,000/500,000 dollars apply.

---

[9] The minimum limitation required by the Oregon Financial Responsibility law at the time of the accident.

Hardware contends that World Wide Dodge was using the automobile rented to Bonsor for the purpose of garage operations and that Bonsor was, therefore, an insured, if at all, under the risk defined in paragraph (a) of Automobile Hazards.

Under a broad view all of World Wide Dodge's activities were for the purpose of garage operations. However, Hardware has chosen to treat separately throughout its policy the "Garage Operations Hazard" and the "Automobile Hazards."

The Garage Operations Hazard is defined by the policy to include the "ownership, maintenance or use of the premises for the purposes of a garage and all operations *necessary* thereto." (Emphasis added.) This definition centers on the premises rather than on automobiles. It can hardly be argued, and Hardware does not argue, that the furnishing of an automobile to a customer while his automobile is laid up for repairs is *necessary* to the operation of a garage. The furnishing of such a substitute automobile either as a "loaner" or under a rental arrangement may be a desirable business practice, but it is in the nature of an amenity and not essential to the operation of the premises as a garage.

As we have pointed out, Hardware has segregated the Automobile Hazards into two general classes, (a) automobiles used "for the purpose of garage operations," and (b) automobiles furnished for the use of other described persons or organizations. We think the coverage provided by the Customer Rental Endorsement, involving as it does the renting of automobiles to others, falls logically under the second classification. We think the trial judge correctly found

that the automobile rented to Bonsor was not being used for the purpose of garage operations.[4]

Plaintiff argues at length that the Limited Coverage Endorsement limits the coverage available to Bonsor to 5,000/10,000 dollars. Since that argument is based on the premise that Bonsor is covered, if at all, under paragraph (a) of Automobile Hazards it has been answered by our holding that Bonsor's coverage is not under paragraph (a). Bonsor's coverage is provided by the Customer Rental Endorsement, and the Garage Endorsement must be considered amended both as to automobile hazards and persons insured to the extent necessary to accomplish that purpose. If necessary, we must consider the Customer Rental Endorsement as incorporated into and made a part of the Garage Endorsement. If Hardware had wished to limit the coverage provided by the Customer Rental Endorsement it could easily have so provided.

■ If all we have said merely demonstrates that Hardware's policy, insofar as the coverage provided under the Customer Rental Endorsement, is ambiguous then we must construe the policy against Hardware,

---

[4] Plaintiff relies on two cases in which a customer's use of an automobile was held to be a covered use in connection with garage operations. Aetna Casualty & Surety Co. v. Buckeye Union Cas. Co., 106 NE2d 589 (Ohio App 1951), reversed on other grounds 157 Ohio St 385, 105 NE2d 568, 31 ALR2d 1317 (1952); Allstate Insurance Company v. Urban, 15 Ill App 2d 386, 146 NE2d 387 (1957). These cases do not persuade us that the same conclusion is appropriate in the present case.

In neither of these two cases was a rental endorsement or provision involved; the courts were dealing with situations in which unless there was coverage under the garage or repair shop operations provisions there was no coverage at all. Moreover, in each instance the policy definitions included operations "incidental" to the use of the premises as a garage or repair shop. The policy in the present case includes only those operations which are "necessary" to such a use.

which easily could have avoided all such ambiguity. If there is an ambiguity, it permeates the nature of the hazard insured against, the person insured, and the limits of liability, and all ambiguities must be determined in favor of defendants. *Signal Ins. Co. v. Mission Ins. Co.*, 254 Or 603, 462 P2d 669 (1969); *Ramco, Inc. v. Pacific Ins.*, 249 Or 666, 439 P2d 1002 (1968); *Cimarron Ins. Co. v. Travelers Ins. Co.*, 224 Or 57, 72, 355 P2d 742 (1960); *Wallace Co. v. State F. M. Auto. Ins. Co.*, *supra* n. 2, 220 Or at 525.

In their respective answers and counterclaims, defendants Bonsor and Beliel each alleged that more than six months had elapsed since they demanded payment from Hardware, and prayed that the court award reasonable attorney fees. The trial court found as a fact that more than six months had elapsed since the demands, and that $5,000 was a reasonable attorney fee in each case, but held as a matter of law that because the case was a declaratory judgment proceeding, defendants were not entitled to recover attorney fees by virtue of their counterclaims. This holding is assigned as error on cross-appeal. At issue is the application of ORS 743.114 (1), which provides:

> "If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, then the plaintiff shall recover as part of his judgment such additional sum as the court may adjudge to be reasonable as attorney fees."

Plaintiff argues that the trial court's decision was correct, relying on *First National Bank v. Malady*, 242 Or 353, 408 P2d 724 (1965). In that case an in-

surer brought a declaratory judgment proceeding to test its liability under a policy. Judgment was for the defendants, declaring that there was coverage under the policy. Defendants filed no counterclaims, and no money judgment was given. This court held that attorney fees were properly denied:

"* * * We can find no basis for the allowance of attorney fees. It is apparent that ORS 736.325 [now ORS 743.114] does not apply to this case." 242 Or at 360.

An award of attorney fees was approved, however, in *Williams v. Stockman's Life Ins.*, 250 Or 160, 441 P2d 608 (1968), a declaratory judgment action in which the insurer was the defendant. The trial court gave judgment for plaintiff for a specific amount, and granted attorney fees. The insurer argued that ORS 743.114 did not apply in a declaratory judgment proceeding. This court said:

"As we have already held, this is an action, which the law recognizes, by an insured to recover damages for breach by an insurance company of its contract of insurance. The case has declaratory judgment overtones, but its essential nature is not, for that reason, altered. ORS 743.114 is, therefore, applicable and the award of an attorney's fee authorized. 250 Or at 172.

Plaintiff argues that this language means that the action was not a declaratory judgment proceeding at all, and that had it been one no attorney fees could have been awarded. We do not agree with this reading of the opinion. The reality of the "declaratory judgment overtones" is attested by the fact that this court on appeal modified the trial court's judgment to include a declaration of plaintiff's future rights under the contract. The distinction between *Malady* and *Wil-*

*liams* is not that one was a declaratory judgment proceeding and the other was not, but rather that in *Malady* there was no recovery under the contract but a declaration of rights only, while in *Williams* there was a recovery in an action on the policy as required by the statute. See, also, *Continental Casualty Company v. Reinhardt*, 284 FS 687 (D Or 1967).

In *Hollopeter v. Oregon Mutual Ins. Co.*, 255 Or 73, 464 P2d 316 (1970), we said again that a defendant insured is not entitled to attorney fees when he prevails in a declaratory judgment proceeding brought by his insurer to test coverage. As in *Malady*, there was no counterclaim by the insured and no money judgment in the declaratory judgment case. We did, however, approve an award of attorney fees when the same insured recovered judgment in an amount exceeding the insurance company's tender in a separate action on the policy. Should we hold that no attorney fees can be recovered in this case because it was first initiated by the insurer as a declaratory judgment proceeding, we would be encouraging the separate trials of issues which might well be more efficiently tried together.

■ Plaintiff also argues that ORS 743.114 does not apply in this case because by its terms it authorizes the award of attorney fees only to successful plaintiffs, whereas recovery in this case was had by the defendants. But statutes referring to "plaintiffs" have often been held to include as well a defendant who files a counterclaim or cross-complaint, if this interpretation appears to be within the intent of the statute. See, e.g., *Thompson v. Mecey*, 101 Ariz 125, 416 P2d 558 (1966); *Wolfe v. Herndon, Excx*, 234 Ark 543, 353 SW2d 540 (1962); *Thomas v. Braffet's Heirs*, 6 Utah

2d 57, 305 P2d 507, 510 (1956). We think that such an interpretation is correct in this case. Defendants' claims against Hardware were not settled within the six month period provided by the statute, and court action was necessary to their recovery. By their counterclaims, they successfully sought affirmative relief.[6] Recovery of attorney fees under our statute is not defeated by the insurer's good faith in failing to settle. The statute is compensatory, not penal. *Hagey v. Mass. Bonding & Ins. Co.*, 169 Or 132, 178, 126 P2d 836, 127 P2d 346 (1942). Therefore, defendants, who were compelled to seek recovery under the policy in court even though a declaratory judgment proceeding was first initiated by the insurer, are entitled to attorney fees when they prevail.

The judgment of the trial court is modified by allowing the claims for attorney fees on cross appeal. As modified, the judgment is affirmed.

---

[6] Judgment was entered against plaintiff in favor of Bonsor in the amount of $65,000 plus interest. Plaintiff was ordered to pay this amount to the clerk of the court, who was ordered to pay it to Beliel or her assignee in satisfaction of her judgment against Bonsor. Judgment was also entered for Beliel against plaintiff for costs and disbursements.