Argued June 6, reversed and remanded August 3, 1972

## CHALMERS ET UX, *Appellants, v.* OREGON AUTOMOBILE INSURANCE COMPANY, *Respondent.*

500 P2d 258

*Alan M. Lee,* Klamath Falls, argued the cause for appellants. With him on the brief were Smith & Lee, Klamath Falls.

*Mel Kosta,* Klamath Falls, argued the cause for

respondent. With him on the brief were Kosta and Brant, P.C., Klamath Falls.

TONGUE, J.

This is an action on an insurance policy to recover for a loss of personal property by theft from premises contended by plaintiffs to be covered by the policy as a "temporary residence" then in "actual use" by them. The case was submitted for decision by the court without a jury on stipulated facts. Plaintiffs appeal from a judgment in favor of defendant based upon a "finding of fact" that the theft occurred at a time when the premises were not in "actual use" by the insured as a "temporary residence." We reverse.

The stipulated facts include the following:

"1. Plaintiff Raymond Chalmers was temporarily at residence being constructed at Odessa, Oregon in June 1969, and thereafter, due to unemployment. His family, including Lola, his wife, child, and grandson, remained at the family residence 1304 Worden St., Klamath Falls, Oregon, but went to the Odessa residence on weekends.

"2. On July 31st, 1969, Chalmers Insurance policy with Defendant, PP-1-4063, was renewed for a 3 year period through Laundry-Ely Company, Klamath Falls, Oregon, said policy covering the home at 1304 Worden St. The Chalmers had a fire policy on the residence at Odessa since November 1968.

"3. Hugh Estes, authorized representative of Laundry-Ely Company, agents for the Defendant, indicated orally to plaintiffs on July 31, 1969, that the homeowners policy issued by defendant, covering the 1304 Worden St. residence, likewise covered the 'contents' at the Odessa residence.

"4. On December 19, 1969, Lola Chalmers, her

son and grandson took Christmas presents, food, clothes, ski equipment and guns to the Odessa residence intending to remain for the holidays, including New Years.

"5. On December 28, 1969, at approximately 4:00 p.m. Entire Chalmers family came to Klamath Falls to go to church and decided to stay overnight in order that Ray Chalmers could pick up his unemployment check and shop for groceries Monday morning before returning to Odessa.

"6. December 28, 1969, evening hours, loss by theft of personal property in the amount of $1,195.88 from the Odessa residence.

"7. December 29, 1969, Chalmers picked up unemployment check, purchased groceries and returned to Odessa for remainder of holidays. Arrived Odessa at 2:00 p.m. Discovered loss and reported it * * *."

The policy included as "Personal Package Form B With Special Building Coverage" the following provision, among others.

"This policy excludes any loss by theft * * * to any other residential premises, or property therein * * * *except when in actual use as his or their temporary residence* * * *." (Emphasis added)

Plaintiffs contend that at the time of the theft loss they were occupying the Odessa premises as a "temporary residence" and were in "actual use" of it at that time; that "actual use" does not require physical presence, and that they were only temporarily absent at the time of the theft.[1] Plaintiffs also contend that these terms of the policy are ambiguous and that this ambiguity must be resolved against the de-

---

[1] In support of this contention plaintiffs cite Kaletta v. Merchants Mutual Insurance Co., 295 NYS2d 850, 31 App Div 2d 689 (1968), and Reiner v. St. Paul Fire & Marine Insurance Co., 106 Ill App 2d 210, 245 NE2d 655, 657 (1969).

fendant insurance company and in favor of coverage for this loss.

Defendant contends, on the contrary, that the terms of the insurance policy must be construed so as to carry out the intention of the parties in accordance with their plain, ordinary and usual meaning and must be given a fair, reasonable and sensible construction; that when so construed the terms of this policy are not ambiguous; that the term "temporary" means "that which is to last for a limited time only, as distinguished from that which is perpetual, or indefinite, in its duration"; that the Odessa house was not a "temporary residence" at the time of the theft, but was being used as a "second residence" because Mr. Chalmers "had been residing at the Odessa property six months and occupying it as a permanent residence, at the same time contending that this was a temporary residence."

Defendant also contends that even if the Odessa house be considered as a "temporary residence" plaintiffs still cannot recover because they were not "actually using" or "actually occupying the Odessa property at the time of the loss, but stayed over night at their residence in Klamath Falls."[2]

■ In resolving these conflicting contentions, we must bear in mind that although an insurance company is ordinarily entitled to the enforcement of an

---

[2] In support of this contention defendant cites Bryan v. Granite State Insurance Company, 185 So 2d 310 (La Ct App 1966).

Defendant also contends that plaintiffs' intent is shown by the fact that after the loss they obtained additional coverage on the Odessa house. We do not believe, however, that such an inference is a proper inference to be drawn from that fact. Although not in point on its facts, compare Williams et al v. Portland Gen. Elec. Co., 195 Or 597, 603, 247 P2d 494 (1952).

insurance policy as written by the company if its terms are clear and unambiguous, in the event of an ambiguity in the terms of an insurance policy, any reasonable doubt will be resolved against the insurance company and in favor of extending coverage to the insured. *Farmers Mut. Ins. Co. v. United Pac. Ins. Co.,* 206 Or 298, 305, 292 P2d 492 (1956).

■ In addition, we must also bear in mind that while the primary rule of contract interpretation, including insurance contracts, is to ascertain the intent of the parties, if possible, it is nevertheless established in Oregon that when a policy of insurance is ambiguous it "should be construed * * * in the sense in which the insured had reason to suppose it was understood." *Growers Refrigeration Co., Inc. v. American Motorists Ins. Co.,* 260 Or 207, 488 P2d 1358 (1971). See also *Borglund v. World Ins. Co.,* 211 Or 175, 181, 315 P2d 158 (1957), and *Jarrard v. Continental Casualty Co.,* 250 Or 119, 126-27, 440 P2d 858 (1968).

■ Viewed in the light of these considerations, we hold that the terms "temporary residence" and "actual use" are ambiguous in a legal sense in that they are general terms which could have been intended to have been used in a more or less narrow or broad sense, depending upon the intention of the parties. Cf. *Gowans v. N.W. Pac. Indemnity Co.,* 260 Or 618, 489 P2d 947 (1971).

If these were technical words, terms of art, or words with a special local meaning, with the result that evidence of usage or surrounding circumstances had been offered to show the intent of the parties in using these words, a question of fact might have been presented for determination by the trial judge as the

trier of the facts, in the absence of a jury. See *May v. Chicago Insurance Co.,* 260 Or 285, 490 P2d 150 (1971). This case, however, was submitted on stipulated facts and it is not contended that the intended meaning of these terms can be determined by reference to any special local meaning, usage or surrounding circumstances. It follows that the meaning of these terms must be decided by this court as a question of law, without regard to any "findings" by the trial court on this question. Cf. *May v. Chicago Insurance Co., supra* at 854.

1. *The Odessa house was a "temporary residence" under the stipulated facts.*

■ As to the term "temporary residence," we note that, according to the stipulated facts, "Plaintiff Raymond Chalmers was *temporarily* at residence being constructed at Odessa, Oregon in June 1969, and *thereafter, due to unemployment.*" We also note that, according to the stipulated facts, when the policy was renewed on July 31, 1969, the insurance agent "indicated orally" that the policy "covered the 'contents' at the Odessa residence."

Assuming that the word "temporary" is to be given the meaning contended by defendant, we cannot believe that a house which was occupied "temporarily * * * due to unemployment" in June 1969 "and thereafter," as stipulated by the parties, became a "permanent residence" because it was still occupied by Mr. Chalmers in December, presumably still "due to unemployment." On the contrary, we cannot presume, at least in the absence of other facts, that the status of "unemployment" was a "permanent," rather than a "temporary" status.

It follows, in our opinion, that since the Odessa house was stipulated to have been occupied "temporarily" by Mr. Chalmers in June 1969 "and thereafter, due to unemployment," and in the absence of other facts, the continued occupancy of the house by him in December must still be considered to have been "temporary."

In any event, and as previously stated, we hold that the term "temporary residence" is ambiguous, with the result that all reasonable doubts as to its intended meaning must be resolved against the insurance company and in favor of extending coverage to the insured, if it is possible to do so by a fair and reasonable interpretation of that term, and that this is a fair and reasonable interpretation of the term "temporary" under the facts of this case.

■ It may be possible, depending upon the facts, for members of a family to have more than one "permanent residence" at the same time.[9] Under the stipulated facts, however, this is not such a case.

2. *"Actual use" of the Odessa house as a "temporary residence" did not require continuous physical presence.*

It is obvious, of course, that for the purpose of theft coverage under an insurance policy, the "actual use" of a house as a "temporary residence" cannot reasonably be said to require continuous, 24-hour physical presence of the insured in the house. Thus, it is conceded that if this house had been used by the insured for a weekend during the summer or winter

---

[9] But see Bryan v. Granite State Insurance Company, 185 So 2d 310 (La Ct App 1966), as cited by defendant.

for recreational purposes, "temporary absences" for such purposes as hiking, skiing, shopping, dining out and other similar "temporary absences" would not necessarily and of themselves interrupt the "actual use" of such a house as a "temporary residence." In this case, however, the facts are different because what is claimed to have been a "temporary absence" not only extended overnight, but because the plaintiffs stayed that night at their home in Klamath Falls.

It may or may not follow that when a family which lives together in a permanent residence takes a vacation together at such a "temporary residence" and then interrupts its vacation by returning to its permanent residence overnight, the "actual use" of the "temporary residence" would be interrupted by such a visit. We do not reach that question in this case, however, because this is not such a case.

Under the stipulated facts of this case, and as previously held, Mr. Chalmers resided "temporarily" at the Odessa house "due to unemployment" and the Odessa house was his "temporary residence" during the entire period involved in this case. It follows, in our opinion, that this included the Christmas holidays when his family visited him at that house. Indeed, there is nothing in the stipulated facts to indicate that his "temporary residence" at that house ceased on January 1, 1970, either due to the termination of his unemployment or for any other reason.

We believe that when this policy was renewed in July 1969, at which time it is stipulated that Mr. Chalmers "was temporarily at residence" at the Odessa house "due to unemployment," and that the insurance agent "indicated" that the policy would "cover" the

contents of that house,[④] it must have been understood and intended that Mr. Chalmers would make occasional visits to Klamath Falls to pick up his unemployment checks, for groceries and for other purposes and that on such visits he might very well spend the night in the family home there.[⑤]

■ We do not believe, however, that under the stipulated facts of this case it would be reasonable to ascribe to the parties an intention that theft "coverage" of the Odessa house under the policy would lapse during such visits. On the contrary, during such visits he would presumably leave at the Odessa house most, if not all, of the personal property which he was given to understand would be "covered" at that house by this policy.

Thus, we hold that such "temporary absences," including this trip to Klamath Falls on the night of this theft, did not interrupt the "actual use" of the Odessa house as the "temporary residence" of Mr. Chalmers, within the intended meaning of that term by the parties in this case, and that this was "the sense in which the insured had reason to suppose it was understood." Cf. *Borglund v. World Ins. Co.*, 211 Or 175, 181, 315 P2d 158 (1957). As previously stated, we also hold that the term "actual use" was ambiguous, with the result that doubts as to its meaning must be resolved against the insurance company and in favor

[④] Defendant says that plaintiffs have not pleaded that representation of coverage by the insurance agent as an estoppel or otherwise. Nevertheless, that stipulated fact may properly be considered on the issue of the intent of the parties in the use of the terms "temporary residence" and "actual use."

[⑤] In this respect this case is to be distinguished from Bryan v. Granite State Insurance Company, 185 So 2d 310 (La Ct App 1966).

of coverage, if it is possible to do so by a fair and reasonable interpretation of that term, and that such an interpretation is a fair and reasonable interpretation of the term "actual use" under the facts of this case. It follows, in our judgment, that plaintiffs were entitled to payment for the theft loss in this case.

Plaintiffs also complain that the trial court refused to hear testimony as to the reasonableness of attorney fees. If the trial court had been correct in denying coverage there would have been no need to hear such evidence. Since, however, the trial court was not correct in that holding, we assume that upon remand of this case it will hear such evidence.

Reversed and remanded.

McALLISTER, J., dissents.