SHADBOLT, formerly Ingebrigtsen, *Respondent,*
*v.*
FARMERS INSURANCE EXCHANGE, *Appellant.*

557 P2d 478

*A. Thomas Cavanaugh,* Portland, argued the cause and filed the briefs for appellant.

*Thomas Sauberli,* of Vergeer, Samuels, Roehr & Sweek, Portland, argued the cause and filed the brief for respondent.

Before Denecke, Chief Justice, and McAllister, Tongue, and Howell, Justices.

TONGUE, J.

**TONGUE, J.**

This is an action at law in which plaintiff seeks to recover upon a policy of automobile insurance issued by defendant to plaintiff. The case was tried before the court, sitting without a jury. The trial court found that the terms of the insurance policy were ambiguous and, for that reason, "afford[ed] coverage for the accident." Defendant appeals from the resulting adverse judgment. We affirm.

Under the terms of the insurance policy, defendant agreed "to pay all damages" for bodily injury "arising out of the ownership, maintenance or use of the described automobile *or a non-owned automobile* * * *." (Emphasis added)

Among the various definitions of terms used in the policy was the following:

> "(8) *Non-Owned Automobile* means an automobile not owned by or *regularly or frequently used by the named insured* or any resident of the same household, other than a substitute automobile." (Emphasis added)

At the time of the accident plaintiff was driving an automobile owned by Boyd Tyler, claimed by her to be a "non-owned automobile" for the purposes of her insurance policy.

Mr. Tyler was a friend of plaintiff. He worked in California during each week, but returned to Portland each week end. Rather than leave his car at the airport during the week, he made an arrangement with plaintiff to drive him to the airport on Sunday evenings in his car and to pick him up there on Friday evenings. Under that arrangement, plaintiff was also to keep Mr. Tyler's car at her home and was to "drive it perhaps once a week to keep the battery up so it would be driveable on week ends for him."

According to a statement by Mr. Tyler, "no restrictions" were placed by him upon driving of his car by plaintiff. She testified, however, that

> "Our discussion was that I wasn't going to be driving it a lot, and I wasn't going to be using it like my own car."

Plaintiff had her own car, which she preferred to drive, and took the bus to and from her work. In accordance with her arrangement with Mr. Tyler, however, plaintiff drove Mr. Tyler's car "about once a week" to keep the battery charged.

On May 20, 1970, plaintiff drove Mr. Tyler's car from her home to the Lloyd Center with her daughter to pick up some skates and on the way home was involved in the accident. Mr. Tyler's insurance policy on the car had previously expired.

Defendant first contends that even if plaintiff did not, in fact, "regularly or frequently use" Mr. Tyler's car, she had the "right" to use it "regularly or frequently" and that her "right" to do so is controlling in this case. In support of that position defendant relies upon our decision in *Wallace Co. v. F.M. Auto Ins. Co.,* 220 Or 520, 526, 349 P2d 789 (1960).

The insurance policy in *Wallace,* however, did not involve a policy which used the term "automobile not owned by or *regularly or frequently used* by the named insured," as in this case, but involved a policy which used the term "*furnished for regular use* * * * to the named insured." (Emphasis added) Thus, in *Wallace,* the issue was not whether the automobile was, in fact, "regularly or frequently used" by the insured, as in this case, but whether the automobile was *furnished* for regular use. In that context we held that the *right* to the regular use of the car was the issue to be decided in that case. For that reason our decision in *Wallace* is not controlling in this case.

Defendant next contends that an ambiguity arises in an insurance policy "only when the insured's reasonable expectation of coverage is *equally* as reasonable as the interpretation favorable to the insurer" (emphasis added) and that under this test the insurance policy was not ambiguous.

We have said, however, that when words or terms of a general nature are used in an insurance policy, such

words or terms may be ambiguous, in the legal sense, when they could reasonably be given a broader or a narrower meaning, depending upon the intention of the parties in the context in which such words are used by them.[1]

■ We have also said that an insurance policy should be construed "according to its character and its beneficent purposes,[2] and in the sense that the insured had reason to suppose that it was understood."[3]

■ Finally, we have said many times that if there is an ambiguity in the terms of an insurance policy, any reasonable doubt as to the intended meaning of such terms will be resolved against the insurance company and in favor of extending coverage to the insured.[4]

■ Viewed in the light of these established rules, we hold that the words "regularly or frequently used" are ambiguous; that such words must be construed so as to be in accord with the purpose of that provision of this insurance policy and in the sense that this plaintiff had reason to suppose that it was understood; and that any reasonable doubt as to the intended meaning of such words must thus be resolved against the insurance company and in favor of extending coverage to this plaintiff.

[1]See *Chalmers v. Oregon Auto Ins. Co.,* 262 Or 504, 509, 500 P2d 258 (1972); *Gowans v. N.W. Pac. Indemnity Co.,* 260 Or 618, 620, 489 P2d 947, 491 P2d 1178 (1971). Cf. *Allen v. Multnomah County,* 179 Or 548, 553-54, 173 P2d 475 (1946).

[2]See *Borglund v. World Ins. Co.,* 211 Or 175, 181, 315 P2d 158 (1957).

[3]See *Borglund v. World Ins. Co., supra* note 2 at 181; *Growers Refrig Co. v. Amer. Mtr. Ins.,* 260 Or 207, 215, 488 P2d 1358 (1971); *Chalmers v. Oregon Auto Ins. Co.,* 262 Or 504, 509, 500 P2d 258 (1972); and *Stitzman v. John Hancock Mut. Life,* 268 Or 625, 632, 522 P2d 872 (1974).

[4]Among cases to this effect, see: *Baker v. Unigard Ins. Co.,* 269 Or 204, 213, 523 P2d 1257 (1974); *State Farm Mut. Auto. Ins. v. Clinton,* 267 Or 653, 662, 518 P2d 645 (1974); *General Acc. Fire and Life v. Shasky,* 266 Or 312, 317, 512 P2d 987 (1973); *Chalmers v. Oregon Auto Ins. Co.,* 262 Or 504, 509, 500 P2d 258 (1972); *Growers Refrig Co. v. Amer. Mtr. Ins.,* 260 Or 207, 215, 488 P2d 1358 (1971); *Bailey v. Universal Underwriters Ins.,* 258 Or 201, 210, 474 P2d 746, 482 P2d 158 (1970); *Hardware Mut. Cas. v. Farmers Ins.,* 256 Or 599, 609, 474 P2d 316 (1970); *Signal Ins. Co. v. Mission Ins. Co.,* 254 Or 603, 606, 462 P2d 669 (1969); *Reed v. Commercial Ins. Co.,* 248 Or 152, 156, 432 P2d 691 (1967); *Farmers Mut. Ins. Co. v. Un. Pac. Ins.,* 206 Or 298, 305, 292 P2d 492 (1956).

It would appear that the primary purpose of the provision of this policy excluding from coverage a "non-owned" automobile which is "regularly or frequently used" by the insured, or by members of his household, is to prevent an insured from having the benefit of coverage for two automobiles which may both be "regularly or frequently used" by him or by members of the same household, in return for payment of a premium based upon insurance for the single automobile described in the policy.

An example of such a case would be a car owned by the employer of a man who also owns one car, which is the car described as owned by him in such an insurance policy. The man is permitted by his employer to use the other car for personal and family use and his wife uses the car listed in his insurance policy for personal and family use. This is not such a case.

We also believe that this plaintiff had good "reason to suppose" that this provision in the policy, including its definition of a "non-owned automobile" as "an automobile not owned by or regularly or frequently used" by her, "was understood" to provide coverage under the facts of this case and that such an interpretation is reasonable as applied to the facts of this case. Conversely, we believe that plaintiff had no good "reason to suppose" that this provision in the policy "was understood" to exclude coverage under such facts on the ground (as contended by the defendant) that Mr. Tyler's car was "regularly or frequently used" by her when her use of that car was limited to use "about once a week" and was for the primary purpose of keeping its battery from running down, for the benefit of Mr. Tyler, rather than for her personal use and benefit.

Under these facts, we believe that there was at least a reasonable doubt whether both parties to this insurance policy intended that the words "regularly or frequently used" would be applicable so as to bar recovery to the insured.[5]

[5]Cf. *Gocha v. Fetterolf,* 363 Mich 344, 109 NW2d 785 (1961).

[ 412 ]

■ It follows, under the rules which we have previously recognized for application in such cases that the trial court did not err in holding that these terms of this policy were ambiguous and that plaintiff was entitled to coverage under this policy under the facts of this case.[6]

Affirmed.

---

[6] Because this case was tried before a judge without a jury and because we agree with the findings and conclusions by the trial judge, we need not consider the further question whether the issue presented in this case was one of law, to be decided by the court, or one of fact, to be decided by the trier of the facts upon application of correct rules of law to the facts of the case. See *May v. Chicago Insurance Co.,* 260 Or 285, 292-93, 490 P2d 150 (1971), and *Chalmers v. Oregon Auto Ins. Co.,* 262 Or 504, 510, 500 P2d 258 (1972). Cf. *Rolf v. N.W. Cattle & Resources, Inc.,* 260 Or 590, 600, 491 P2d 195 (1971).