Argued and submitted March 25, reversed and
remanded September 8, reconsideration denied October 15,
petition for review allowed November 17, 1981 (292 Or 108)

## A-1 SANDBLASTING &
## STEAMCLEANING CO., INC.,
*Appellant,*

*v.*

## BAIDEN et al,
*Respondents.*

## (A7902-00834, CA 17975)

632 P2d 1377

Charles R. Mowry, Portland, argued the cause and filed the brief for appellant.

Robert E. Franz, Jr., Eugene, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

This is an action on a liability insurance contract issued by defendants to plaintiff. Claims were made against plaintiff as a result of plaintiff's spray paint operation. Defendants refused to pay the claims under the policy. As a result, plaintiff paid the claims and brought this action to recover the amounts paid. The trial court granted defendants' motion for summary judgment holding that exclusion (h) of the policy precluded coverage for the overspray claims. Plaintiff appeals from the judgment entered. We reverse and remand.

Plaintiff was in the business of sandblasting, steamcleaning and painting large structures, including bridges. In September, 1977, plaintiff purchased a broad form property damage liability insurance policy from the defendants. In May, 1978, plaintiff was awarded a contract with the State of Oregon to paint the McCollough Bridge in Coos County. Under the terms of the contract with the State, plaintiff could paint the bridge by brush, roller or spray. The contract also required plaintiff to make arrangements for the removal of overspray from passing vehicles. Despite plaintiff's efforts to avoid overspray damage, a large number of vehicles passing over the bridge were sprayed. In accordance with its contract, plaintiff established a paint removal service near the bridge. Not all drivers took advantage of the service, and some of those who did were unsatisfied. The affidavit of plaintiff's owner asserts that precautions to avoid overspray were taken, but that despite any precautions taken in such a spray paint operation, overspray in undeterminable amounts is inevitable.

The trial court in allowing defendants' motion for summary judgment held as a matter of law that the following policy exclusion precluded coverage:

"This insurance does not cover liability

" * * * * *

"(h) For damage to property arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse

or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

Plaintiff on appeal contends that the contract language quoted is ambiguous and should, therefore, be construed against the party drafting the contract with all reasonable doubts resolved in favor of extending coverage in accordance with the reasonable expectations of the insured. *Busch v. Ranger Ins. Co.,* 46 Or App 17, 23, 610 P2d 304, *rev den* 289 Or 337 (1980); *Shadbolt v. Farmers Insur. Exch..* 275 Or 407, 411, 551 P2d 478 (1976); *Gowans v. N.W. Pac. Indemnity Co.,* 260 Or 618, 620, 489 P2d 947, 491 P2d 1178 (1971).

■     Summary judgment is properly granted only where there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law. ORCP 47C. While generally, the construction of contracts, including insurance contracts, is a question of law, where the contract language is ambiguous, evidence is admissible to establish the meaning or intended scope of the language used. In such cases, the meaning of the contract terms becomes a question of fact. *Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 643, 576 P2d 1244 (1978). As the Supreme Court said in *Shadbolt:*

"  * * * [W]hen words or terms of a general nature are used in an insurance policy, such words or terms may be ambiguous, in the legal sense, when they could reasonably be given a broader or a narrower meaning, depending upon the intention of the parties in the context in which such words are used by them.

"We have also said that an insurance policy should be construed 'according to its character and its beneficent purposes, and in the sense that the insured had reason to suppose that it was understood.' " (Footnotes omitted.) 275 Or at 410-11.

*See also, Gowans v. N.W. Pac. Indemnity Co., supra,* 260 Or at 620.

■     Defendants contend that the exclusion of insurance coverage for "damage to property arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases,

waste materials, or other irritants, contaminants or pollutants" makes it clear that damage caused by any liquid, including paint, released into the atmosphere is excluded. Defendants thus contend that the broadest possible meaning should be given to the language used. We agree that the language can be so read, but conclude that it can also be reasonably given a narrower meaning "depending upon the intention of the parties in the context in which such words are used" and is thus legally ambiguous. The word "liquid" is a general word that follows specific words. As a rule of construction, when a contract contains general words used after specific terms, the general words are to be confined to things *ejusdem generis* with the things previously specified. *McGrath v. Electrical Const. Co.*, 230 Or 295, 307, 364 P2d 604, 370 P2d 231 (1961); *Rayburn et ux v. Crawford et ux*, 187 Or 386, 396, 211 P2d 483 (1949). The specifics mentioned in the policy exclusion are generally considered to be irritants, contaminants or pollutants, whereas "paint" in common understanding is not generally so thought of. Likewise, defendants' reliance on the word "liquid" as being all-inclusive and, thus, determinative is misplaced. Given defendants' reading of the clause, the discharge of any liquid, including pure water, would be excluded. Taken in connection with the specifics mentioned and the phrase "or other irritants, contaminants or pollutants," such a broad construction of the term "liquid" is unwarranted.

Defendants further argue that because of the chemical composition of paint, it is included within the excluded class of acids or alkalis. While it may be technically true that paint could fall within these classes, we do not believe that that meaning is so clear as to cause a reasonable person in the position of the insured to believe that paint was one of the substances referred to in exclusion (h). *Rolfe v. N.W. Cattle & Resources, Inc.*, 260 Or 590, 600, 491 P2d 195 (1971).

■ In determining what the parties may have intended by the exclusion, the purpose for which the exclusion exists may be considered. *Timberline Equip. Co. v. St. Paul Fire and Mar. Ins., supra,* 281 Or at 643. Here the parties have not provided us with an explanation of the purpose of the exclusion; however, the exclusion is one commonly

contained in general liability policies and is commonly referred to as the "pollution exclusion." 3 Long, Law of Liability Insurance, App 68 (1976).

*Pepper Industries, Inc. v. Home Insurance Co.*, 67 Cal App 3d 1012, 134 Cal Rptr 904 (1977), is an analogous case construing a similar policy exclusion.[1] In that case, plaintiff discharged gasoline into a city sewer system. A fire and explosion resulted, causing damage to the system. Plaintiffs sought a declaratory judgment that the exclusionary clause did not preclude coverage for the damage caused by the fire and explosion. The court stated:

> "We are inclined to agree that the words used in the endorsement were intended to include any and all possible areas of discharge, but they cannot expand the purposes for which the endorsement itself was obviously intended. A fair reading of the endorsement leads to the conclusion it was intended to exclude insurance coverage resulting from pollution and contamination of the environment, be it land, water or the atmosphere. Although the City's sewer and pumping station may reasonably be said to fit into one or more of these categories, the fact remains the City is not claiming its facilities were polluted or contaminated but rather that they were destroyed or damaged by an explosion and fire. * * * If Home intended Endorsement 8 to exclude coverage for damage resulting from such incidents, it could have done so by the use of a few precise and specific words." 134 Cal Rptr at 908.

■    Similarly here, the claims made against plaintiff were not for pollution damage to the environment but for overspray damage to the paint of passing vehicles. While the California court's conclusion as to the purpose of the exclusion is not binding on this court, it clearly demonstrates that the exclusion being dealt with here admits of a

---

[1] The exclusion provided as follows:

"In consideration of the premium charged, it is agreed that this policy does not apply to:

"(1) Bodily Injury or Property Damage arising out of the discharge, dispersal, release or escape of oil or other petroleum derivatives or substances (including oil refuse or oil mixed with wastes) smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; whether or not sudden and accidental." 134 Cal Rptr at 906.

reasonable construction differing from that of the trial court. The choice between broader interpretation contended for by the defendants or the narrower interpretation contended for by the plaintiff would, as noted earlier, depend upon the intention of the parties in the context in which the words were used by them and thus would be a question of fact not properly resolved as a matter of law on a motion for summary judgment. The affidavit of plaintiff's owner asserts that he intended to obtain coverage for overspray. Defendants were aware from plaintiff's application for the policy of insurance that plaintiff was in the business of bridge sandblasting and painting and that previous overspray claims had been made against plaintiff. Given the ambiguity in the exclusion itself, and plaintiff's evidence of the matters communicated to defendants' broker in plaintiff's application for insurance, defendants were not entitled to a judgment as a matter of law based upon the language of policy exclusion (h).

Defendants contend, however, that the summary judgment can be sustained on the alternative ground that plaintiff's conduct was intentional and that, therefore, the defendants, as a matter of public policy, may not be held liable to provide insurance coverage, *citing Isenhart v. General Casualty Co.,* 233 Or 49, 377 P2d 26 (1962), and *City of Burns v. Northwestern Mutual,* 248 Or 364, 434 P2d 465 (1967). In that case, the Oregon Supreme Court stated:

> " * * * Defendant contends that the claim still came within the previously set forth policy exclusion because the moving of the body was an intentional act. While the moving of the body was an intentional act, it does not necessarily follow that the injury was intended. The policy exclusion relates to *injury* caused intentionally. It is not sufficient that the insured's intentional, albeit wrongful, act has resulted in unintended harm; it is the harm itself that must be intended before the exclusion will apply. An act may be so certain to cause a particular kind of harm that it can be said that a person who did such an act intended the harm." (Emphasis in original.) 248 Or at 369.

Defendants argue that plaintiff's overspray was an act, according to the plaintiff's own evidence, substantially certain to result in damage. The language of *City of Burns v. Northwestern Mutual, supra,* was clarified in *Nielsen v.*

*St. Paul Companies,* 283 Or 277, 583 P2d 545 (1978), in which the Supreme Court stated:

> "It is not sufficient that the insured's intentional, albeit unlawful, acts have resulted in unintended harm; the acts must have been committed *for the purpose of inflicting the injury* and harm before either a policy provision excluding intentional harm applies or the public policy against insurability attaches. *Snyder v. Nelson/Leatherby Ins.,* 278 Or 409, 413-14, 564 P2d 681 (1977); *City of Burns v. Northwestern Mutual,* 248 Or 364, 369, 434 P2d 465 (1967)." (Emphasis added.) 283 Or at 281.

Defendants do not contend, and plaintiff's admissions do not establish as a matter of law, that plaintiff's spray paint operation was conducted "for the purpose of inflicting the damage for which plaintiff seeks recovery under the policy."[2]

Reversed and remanded.

---

[2] In view of our discussion of defendants' alternative basis for sustaining the summary judgment, it is unnecessary for us to comment further concerning plaintiff's additional contention that a factual dispute exists concerning whether the following exception to the exclusion applies:

" * * * This exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."