Argued and submitted October 12, 1988, resubmitted In Banc September 7, affirmed November 15, 1989, reconsideration denied February 9, petition for review denied March 27, 1990 (309 Or 521)

MONTEE et ux,
*Appellants,*

*v.*

STATE FARM FIRE AND CASUALTY COMPANY,
*Respondent.*

(CV87-115; CA A47580)

782 P2d 435

Leeroy O. Ehlers, Pendleton, argued the cause and filed the briefs for appellants.

J. Philip Parks, Salem, argued the cause and filed the brief for respondent.

RICHARDSON, J.

Newman, J., dissenting.

## RICHARDSON, J.

Plaintiffs brought this action on a homeowner's insurance policy, issued by defendant,[1] to recover for physical damage to their house. The trial court granted defendant's motion for summary judgment, and plaintiffs appeal from the resulting judgment.[2] We affirm.

On February 23, 1986, during the policy period, plaintiffs saw a crack in their basement wall. During the next week, the crack enlarged, other cracks appeared upstairs, doors became misaligned with their frames and did not close properly, plaster on the walls bulged, and plaintiffs heard cracking, popping and creaking noises in the house. A city water department employe discovered that water was running from a broken pipe in an unoccupied house uphill from and adjacent to plaintiffs' home. The water ran under the earth to plaintiffs' foundation. On March 2, 1986, the employe shut off the water at the adjacent house. Plaintiffs observed no further damage or movement of their house.

Defendant asked an engineer to investigate the loss. He reported that, between January 3, 1986, and March 2, 1986, 63,500 gallons of water had escaped from the broken pipe. He concluded:

"That the visible damage to the structure occurred in the recent past is evidenced by cracks in the foundation wall that occurred after the walls were painted, doors that stick in locations where there are no indications of previous wear marks, and door latches that do not line up with striker plates or old latch marks on striker plates.

"The structure has experienced an uneven settlement which has twisted the house. The greatest settlement appears to be at the northwest corner of the foundation. This most probably occurred as a result of abnormal amounts of ground water in that vicinity.

"The above information leads to the conclusion that structural damage to the subject foundation is a result of water

---

[1] Plaintiffs also sued to recover damages for their loss from defendant Doyle, the adjacent property owner. The judgment does not dispose of the claim against him, and he is not a party to the appeal. The judgment meets the finality requirements of ORCP 67B. We refer to defendant insurer as "defendant."

[2] Plaintiffs assign error to the denial of their motion for summary judgment as well as to the granting of defendant's.

flowing freely from a broken pipe in the vacant house to the north over a period of 58 days. The flow of water followed the natural slope of the ground south toward the northwest corner of the subject foundation, reducing the bearing capacity of the soil under the foundation, thus causing uneven settlement."

In an affidavit that defendant submitted in support of its motion, the engineer stated the opinion that the settling of plaintiffs' home "was most probably due * * * to the erosion, sinking, or contraction of the soil around the home's foundation."

The policy contains the exclusion:

"1. We do not insure for loss to the property described in Coverage A either *consisting of,* or directly and immediately caused by, one or more of the following:

"* * * * *

"(i) *settling, cracking,* shrinking, *bulging,* or expansion of pavements, patios, foundation, walls, floors, roofs, or ceilings;

"* * * * *

"However, we do insure for *any ensuing loss* from items a. through j. unless the loss is itself a Loss Not Insured by this Section." (Emphasis supplied.)

Defendant contends that plaintiffs' losses consisted entirely of cracking and bulging of walls and settlement of the foundation and are therefore excluded. Plaintiffs argue that the exclusion does not apply to settling and cracking caused by "some external force rather than * * * normal or gradual * * * settling or cracking." Consequently, they contend, it does not apply to their losses, which were caused by water from the neighboring house. Plaintiffs also maintain that the losses were "serious and to the point of impairment of the structural integrity of the home" and, therefore, did not consist solely of settling and cracking, but amounted to a "collapse" that ensued from the settling and cracking. Defendant responds that the external or natural *cause* of the damage is not a relevant issue, because the policy excludes losses *consisting of* settling and cracking, regardless of their cause. Defendant

argues further that the house did not collapse, and that plaintiffs' contention based on the *seriousness* of the damage disregards the fact that the *kinds* of damage were settling, cracking and other phenomena enumerated in the exclusion.[3]

We agree with defendant. The cause of the losses has no bearing on whether they consist of the excluded kinds of damage. The cases from other jurisdictions on which plaintiffs rely, *e.g., Ariston Airline & Cater. Sup. v. Forbes,* 211 NJ Super 472, 511 A2d 1278 (1986), and *Souza v. Corvick,* 441 F2d 1013 (DC Cir 1970), are largely inapposite, because the decisive issue in them was whether the causes of the losses brought them within the exclusions. In any event, we do not find those cases to be persuasive.

We also disagree with plaintiffs' argument that the damage constituted a "collapse" that ensued from the settling and cracking. Nothing in the record indicates that the house *actually* collapsed or that the particular damages were not of the excluded kinds. Plaintiffs' point seems to be that, given the sheer volume and severity of the settling and cracking, the whole must be regarded as different from the sum of the parts, and the aggregate loss must be viewed as different in kind from the particular damages that comprised it. Had the house in fact collapsed, that might have been an "ensuing loss" within the meaning of the exclusion. However, we do not agree that the extensiveness and seriousness of the settling and cracking mean that the overall loss was something other than settling and cracking, or that it ensued from settling and cracking. In effect, plaintiffs urge us to read the policy as excluding coverage only for minor settling and cracking; the language of the exclusion does not permit that reading.

The dissent would conclude that the exclusion is ambiguous and can therefore allow coverage of plaintiffs' damages. We discern no ambiguity. It is unnecessary and impossible for us to equal the length or the fervor of the dissent's discussion, because the essence of our conclusion is that the contractual language speaks for itself. We nevertheless note that the labored reasoning that the dissent

---

[3] Because we agree with defendant regarding this exclusion, it is unnecessary for us to decide whether the losses also come within the "earth movement" exclusion of the policy.

must employ in its pursuit of an ambiguity is further proof that none exists. *See Mortgage Bancorp. v. New Hampshire Ins. Co.,* 67 Or App 261, 264, 677 P2d 726, *rev den* 297 Or 339 (1984). The language of the exclusion is clear, and it applies to all of the losses in question.

Affirmed.

**NEWMAN, J.,** dissenting.

An external force caused plaintiffs' extensive loss. Water, 63,500 gallons of it, flowed from a broken pipe at the residence on the adjacent uphill property and ran downhill under the earth to plaintiffs' foundation.

Defendant has the burden to prove that the policy excludes coverage. *Stanford v. American Guaranty Life Ins. Co.,* 280 Or 525, 527, 571 P2d 909 (1977). The first pertinent exclusion ("clause 1") provides:

"1. We do not insure for loss to the property described in Coverage A either consisting of, or directly and immediately caused by, one or more of the following:

"* * * * *

"(i) settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs, or ceilings;

"* * * * *

"However, we do insure for any ensuing loss from items a. through j. unless the loss is itself a Loss Not Insured by this Section."

The second pertinent clause ("clause 2") provides:

"2. We do not insure under any coverage for loss (including collapse of an insured building or part of a building) which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: a) the cause of the excluded event; or b) other causes of the loss; or c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:

"a. * * *

"b. Earth Movement, meaning any loss caused by,

resulting from, contributed to or aggravated by earthquake; landslide; mudflow; sinkhole; erosion; the sinking, rising, shifting, expanding or contracting of the earth."

As to clause 1, the majority does not assert that the loss was caused by settling or cracking.[1] Clearly the loss was caused by the water from the neighbor's broken pipe. Rather, the majority argues that the loss is excluded because it consists of settling or cracking and that the words plainly mean *any* settling or cracking. The majority's argument, however, depends on the meaning of the words "settling" and "cracking."

It is hard to imagine that plaintiffs could have thought, when they purchased the policy, that settling or cracking mean what the majority says. The ordinary purchaser would not have expected that clause 1 excludes settling or cracking from application of an artificial external force, such as the 63,500 gallons of water that escaped from the neighbor's property. In the context of both clause 1 and the entire policy, the ordinary insurance purchaser would have expected that the clause excludes only settling and cracking due to changes from natural causes in the normal course of events, such as expansion or contraction due to temperature changes. That, to the ordinary purchaser, would be the plain meaning of the words. Moreover, "an insurance policy 'should be construed * * * in the sense in which the insured had reason to suppose it was understood.'" *Growers Refrig. Co. v. Amer. Mtr. Ins.*, 260 Or 207, 215, 488 P2d 1358 (1971), *quoting Borglund v. World Ins. Co.*, 211 Or 175, 181, 315 P2d 158 (1957). As the drafter of the policy, defendant could have explicitly explained in the policy that it meant otherwise. It did not.

Moreover, if, as the majority argues, the clause excludes *any* settling or cracking regardless of the cause, the exclusion would swallow much of the coverage that plaintiffs reasonably supposed that they had purchased. For example, the policy would not cover settling or cracking caused by fire or by a vehicle crashing into the house. If the language means

---

[1] When we refer to "settling or cracking," we are referring to "settling, cracking, shrinking, bulging, or expansion" referred to in clause 1.

what the majority says, it would substantially defeat the purpose of its policy, *see Clark Motor Co. v. United Pac. Ins. Co.,* 172 Or 145, 151, 139 P2d 570 (1943), and would afford "less than the substantial equivalent of the coverage" under the statutorily mandated standard fire insurance policy. ORS 743.607(1); ORS 743.609.

The majority asserts that the plain meaning of clause 1 is to exclude coverage for *any* settling or cracking; I assert that its plain meaning excludes only settling and cracking that occur from natural causes in the normal course of events. The majority reads clause 1 in its broadest sense; I would read it narrowly. An ambiguity exists if a clause is reasonably susceptible of more than one interpretation. *See Western Fire Insurance Co. v. Wallis,* 289 Or 303, 308, 613 P2d 36 (1980). The terms of an insurance policy are ambiguous "when they could reasonably be given a broader or narrower meaning, depending upon the intention of the parties in the context in which [the terms] are used by them." *Shadbolt v. Farmers Insur. Exch.,* 275 Or 407, 411, 551 P2d 478 (1976).

When ambiguity exists in an insurance contract, we should construe it against the insurer, *Totten v. New York Life Ins. Co.,* 298 Or 765, 771, 696 P2d 1082 (1985), and favor finding that the policy covers the insured. *Shadbolt v. Farmers Insur. Exch., supra,* 275 Or at 411. As stated in *Totten,* "We interpret the terms of an insurance policy according to what we perceive to be the understanding of the *ordinary* purchaser of insurance." (Emphasis supplied). 298 Or at 771. The understanding of the ordinary purchaser is precisely the one that I have described. Accordingly, even if clause 1 is ambiguous, the clause would not apply here.

The majority does not even take up defendant's argument that clause 2 excludes plaintiffs' loss because "earth movement" caused plaintiffs' loss. The argument is without merit. The policy provides that the "excluded event" is "earth movement." It defines "earth movement" to mean "any loss caused by, resulting from, contributed to or aggravated by earthquake; landslide; mud flow; sink hole; erosion; the sinking, rising, shifting, expanding or contracting of the earth." Those all are natural phenomena. As the policy defines "earth movement," it does not include a movement artificially caused

by 63,500 gallons of water flowing from a broken pipe on a neighbor's property onto plaintiffs' land.[2]

The introductory paragraph of clause 2 does not change my result. It states that the exclusion applies "regardless of the * * * *cause* of the excluded event." (Emphasis supplied.) The language, however, must be read together with the definition of the excluded event—earth movement —which the policy defines in terms of particular natural phenomena. What happened here was not an "excluded event."

Because neither clause 1 or clause 2 applies, I would hold that the court erred when it granted summary judgment for defendant and denied plaintiffs' motion for summary judgment on liability and would reverse and remand with instructions to enter judgment for plaintiffs on liability.

Rossman, Deits and Riggs, JJ., join in this dissent.

---

[2] Courts in other jurisdictions have construed comparable "earth movement" exclusionary clauses to refer to natural events. *See, e.g., Peach State Uniform Service, Inc. v. American Ins. Co.,* 507 F2d 996 (5th Cir 1975); *Broome v. Allstate Ins. Co.,* 144 Ga App 318, 241 SE2d 34 (1977); *Barash v. Insurance Co. of North America,* 114 Misc 2d 325, 451 NYS 2d 603 (1982).