Argued and submitted October 9, reversed and remanded in part with instructions; otherwise affirmed December 2, 1992, reconsideration denied March 24, petition for review pending 1993

## Jack LARGENT,
### *Respondent,*
### *v.*
## STATE FARM FIRE & CASUALTY COMPANY,
### *Appellant.*

## (9006-03887; CA A71495)

842 P2d 445

J. Philip Parks, Salem, argued the cause for appellant. With him on the briefs were Billy M. Sime and Parks, Bauer & Sime, Salem.

Robert E. L. Bonaparte, Portland, argued the cause for respondent. With him on the brief were Michael J. Gentry and Tooze Shenker Holloway & Duden, Portland.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff brought this action on a policy issued by defendant insurer that covered a rental house that plaintiff's tenants or their associates damaged through the operation of an illegal methamphetamine laboratory.[1] The trial court granted plaintiff's motion for a directed verdict on the issue of coverage for the damage under the policy, made at the conclusion of his own case, but allowed defendant to proceed with its case. The court then denied defendant's motion for a directed verdict, at the conclusion of its case, and submitted only the issue of damages to the jury. The jury awarded damages, and defendant appeals. We affirm in part and reverse in part.

The central issue is whether coverage of the damage from the illegal laboratory is excluded under the policy as "contamination." The policy provides coverage for "accidental direct physical loss" to the premises, but excludes losses "consisting of, or directly and immediately caused by," *inter alia*,

"wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; *contamination*; smog; smoke from agricultural smudging or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; birds, vermin, rodents, insects or domestic animals." (Emphasis supplied.)

The evidence at trial was in some conflict on the precise method by which the methamphetamine was "cooked" and the property thereby damaged. However, it was uniformly to the effect that heating and chemical reaction processes were used, resulting in discharge of airborne vapor and particulates.

Defendant assigns error to the granting of plaintiff's motion for a directed verdict on the issue of coverage and the denial of its own. It first contends that the court had no authority to grant a directed verdict for plaintiff at the conclusion of his case-in-chief. Although the procedure was

---

[1] Plaintiff also stated a claim for intentional interference with business relationships. The trial court granted a summary judgment for defendant on that claim and entered a separate judgment under ORCP 67B, from which plaintiff appeals separately. *Largent v. State Farm Fire & Casualty Co. (A69831)*, 116 Or App 661, 842 P2d 447 (1992).

unorthodox, any error was harmless. Defendant was permitted to present its evidence, and the dispositive question is one of law.

■      Defendant explains that it

"acknowledges that an argument can be made that when chemicals from the production of methamphetamine permeate porous materials such as drapes, carpets, walls, and woodwork, the damage caused thereby constitutes an 'accidental direct physical loss.' The dispositive issue in this case is whether such a loss consisted of or was caused by 'contamination.' "

Defendant contends that the damage consisted of chemical contamination and, therefore, comes within the exclusion.

Plaintiff responds, in effect, that the contamination exclusion does not apply to sudden damage, such as that resulting from the discharge of smoke or vapor, even if residual contamination ensues. Rather, it asserts, the exclusion applies only when contamination happens over time and is an independent direct source of the loss. Plaintiff analogizes contamination to the other causes of loss listed in the same exclusionary paragraph, such as "wear and tear." He also argues that defendant's theory would eviscerate virtually all coverage, because many if not most events that are clearly covered, *e.g.*, smoke, fire and explosion, result in chemical byproducts and secondary contamination. Hence, according to plaintiff, defendant's argument amounts to a *reductio ad absurdum*. Plaintiff would conclude that the exclusion refers to contamination that is itself the loss or the cause of loss, such as the steady leaching of chemicals from the soil into the foundation. However, his position is that the exclusion does not apply to underlying covered events that may have the incidental result of producing residual contamination. We agree with plaintiff. Reading the policy as a whole, the only logical meaning of the exclusion is the one plaintiff offers, rather than one which would negate much of the policy's principal coverage. The trial court did not err by ruling that defendant was liable for coverage as a matter of law or by directing the verdict.[2]

---

[2] None of the cases that the parties cite is controlling, and none is as persuasive as the language of the policy.

■     In the only remaining assignment that calls for discussion, defendant argues that the court erred by submitting to the jury plaintiff's claim for attorney fees that he anticipated he would incur in selling the rental house. Defendant asserts that that item of damages does not come within its coverage for either actual cash value or replacement cost. Plaintiff answers that we should adopt the "broad evidence rule," under which, assertedly, the disputed evidence would be relevant to value. Assuming plaintiff's premises, but not deciding them, the question is not one of relevance: it is one of coverage. The policy does not provide coverage for the anticipated attorney fees.[3]

Reversed and remanded with instructions to delete from judgment award of anticipated legal fees for sale of property; otherwise affirmed.

---

[3] The award on that claim was $1,000. The total award exceeded $56,000. Even though plaintiff nominally prevails, we decline to award costs.