TOOKEY, J.
*901 *209 Plaintiffs sought coverage under their policy of insurance with defendant, State Farm, for damage to plaintiffs' combine that occurred when the combine rolled down a hill at a high rate of speed with its engine off, causing components to fail because they were not being lubricated with oil. State Farm denied the claim, asserting that the loss was subject to the policy's exclusion for "mechanical breakdown." Plaintiffs then brought this action for breach of contract. On the parties' cross-motions for summary judgment, the trial court granted State Farm's motion, denied plaintiffs' motion, and dismissed the claim, concluding that the loss was subject to the mechanical breakdown exclusion. Plaintiffs appeal. We conclude that the trial court erred in determining that plaintiffs' claim was subject to the mechanical breakdown exclusion and in granting State Farm's motion and denying plaintiffs' motion for summary judgment; we therefore reverse and remand.
On review of the trial court's rulings on cross-motions for summary judgment, we view the record in the light most favorable to the party opposing the motion for whether there are any disputed issues of material fact and whether either party was entitled to judgment as a matter of law. Eden Gate, Inc. v. D & L Excavating & Trucking, Inc. , 178 Or. App. 610, 622, 37 P.3d 233 (2002).
The facts are largely undisputed. Plaintiffs' employee was operating a combine on steep terrain when he accidentally drove into a drainage ditch, causing the combine to tip forward and its back wheels to lift off the ground. The operator, wanting to assess the situation and concerned for his safety, turned off the engine and climbed down. The combine then rolled down the hill, coming to a stop at the bottom.
Because the engine had been turned off before the combine rolled down the hill, the combine's hydraulic pump and motor sustained damage as the combine rolled down the hill, a result of metal-to-metal components moving against each other without lubrication. Morrow County *210 Grain Growers, which repaired the combine, described the damage:
"The hydraulic drive system on this type of machine is hydrostatically controlled which is powered by the engine and uses pressurized hydraulic oil to drive the machine at very low speeds. Since the machine went down the hill without the engine running the hydraulic drive system was not functioning and not being supplied with oil internally. To keep the parts and pieces lubed without the oil being able to be flushed throughout the system, the metal to metal components failed almost immediately while going down hill at a high rate of speed. The hydraulic pump and motor had both failed and were removed from the machine by a technician and were disassembled in the shop for further investigation. After the pump and motor were disassembled it was very obvious the pump and motor failed from the accident of the machine traveling down the hill the way the customer explained the scenario to us."
Plaintiffs had an endorsement in their State Farm policy for "accidental direct physical loss" to their "unscheduled farm personal property," including the combine. The policy provided:
"Except as provided in SECTION I - LOSSES NOT INSURED - COVERAGES D, E, F, we insure for accidental direct physical loss to farm tractors, planters, drills, hay balers, and harvesters of all kinds including combines, corn pickers, cotton pickers, fruit and vegetable pickers, potato diggers and pickers, sugar beet diggers, peanut diggers and silage choppers covered under COVERAGE E - UNSCHEDULED FARM PERSONAL PROPERTY. "
(Capitalization and boldface in original.)
The policy giveth, and the policy taketh away. The policy included the following exclusion:
"We do not insure for any loss to the property *** which consists of, or is directly and immediately caused by ***
"*** wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown."
*902 Thus, the policy excluded coverage both for loss consisting of mechanical breakdown and loss caused by mechanical breakdown. It is undisputed that in this case, if the exclusion *211 applies, it is because the loss "consists of" mechanical breakdown. On appeal from the trial court's judgment for State Farm, plaintiffs assert that the trial court erred in concluding that the loss for which they are seeking coverage was "mechanical breakdown" within the meaning of the policy.[1]
The interpretation of an insurance policy is a question of law, and our task is to ascertain the parties' intentions. Hoffman Construction Co. v. Fred S. James & Co ., 313 Or. 464, 469, 836 P.2d 703 (1992). "We determine the intention of the parties based on the terms and conditions of the insurance policy," id. , as interpreted from the perspective of the "ordinary purchaser of insurance." Totten v. New York Life Ins. Co. , 298 Or. 765, 771, 696 P.2d 1082 (1985) ; see also Hunters Ridge Condo. Assn. v. Sherwood Crossing , 285 Or. App. 416, 422, 395 P.3d 892 (2017) (terms of insurance policy are to be interpreted according to understanding of the ordinary purchaser of insurance); Boly v. Paul Revere Life Ins. Co. , 238 Or. App. 702, 708-09, 246 P.3d 1 (2010), rev. den. , 350 Or. 130, 250 P.3d 922 (2011) (meaning of term in insurance policy that is not defined in the policy is to be determined based on the understanding of the ordinary purchaser (citing Botts v. Hartford Acc. & Indem. Co. , 284 Or. 95, 100, 585 P.2d 657 (1978) )). Determining the applicability of the mechanical breakdown exclusion turns on a proper interpretation of the clause containing the exclusion.
If an insurance policy explicitly defines a disputed term, then we apply that definition. Groshong v. Mutual of Enumclaw Ins. Co ., 329 Or. 303, 307-08, 985 P.2d 1284 (1999). But if the policy does not define the term, we turn to various aids of interpretation, first considering whether the term has a plain meaning, because it "is susceptible to only one plausible interpretation." Id. at 308, 985 P.2d 1284. If the term has a plain meaning, we will apply that meaning and our analysis is complete. If the term has more than one plausible interpretation, we will proceed to the second interpretive aid, id . at 312, 985 P.2d 1284, examining the term "in light of 'the particular context in which that term is used in the policy and the broader context of the policy as a whole.' "
*212 Hoffman , 313 Or. at 470, 836 P.2d 703. If an ambiguity remains after that analytical exercise, then "any reasonable doubt as to the intended meaning of such [a] term[ ] will be resolved against the insurance company." Shadbolt v. Farmers Ins. Exch. , 275 Or. 407, 411, 551 P.2d 478 (1976). "A term is ambiguous *** only if two or more plausible interpretations of that term withstand scrutiny, i.e. , continue[ ] to be reasonable," despite our resort to the interpretive aids outlined above. Hoffman , 313 Or. at 470, 836 P.2d 703 (italics in original).
The term "mechanical breakdown" is not defined in the policy. Thus, we first consider the "common," or ordinary meaning of the term. Finley v. Prudential Ins. Co. , 236 Or. 235, 245, 388 P.2d 21 (1963). "[I]t is for the court to decide the definition which is properly applicable to the particular factual situation, taking into consideration what [the court believes] to be the popular non-technical understanding of the term." Botts , 284 Or. at 103, 585 P.2d 657.
Webster's Third New Int'l Dictionary 1400 (unabridged ed. 2002), to which we often refer for the common meaning of a term, defines "mechanical" as "of, relating to, or concerned with machinery." The relevant definition of "breakdown" is a "situation in which machinery becomes inoperative through breakage or wear : an ending of effective operation." Id. at 272, 388 P.2d 21.
The parties offer other "popular non-technical" definitions of the term "mechanical breakdown." Plaintiffs' definition is derived from the insurance case law of other jurisdictions defining a mechanical breakdown as a "functional defect in the moving parts of machinery which causes it to operate improperly or cease operating." Connie's Const. Co., Inc. v. Cont'l W. Ins. Co. , 227 N.W. 2d 204, 207 (Iowa 1975) (citing National Investors Fire & Casualty Co. v. Preddy , 248 Ark. 320, 322, 451 S.W. 2d 457 (1970) (mechanical *903 breakdown means "a functional defect in the moving parts of the equipment which causes the latter to cease functioning or to function improperly")). Plaintiffs contend that that definition supports a commonly understood meaning for "mechanical breakdown" as a breakage that occurs during the machine's normal operations and not a breakage due to movement unrelated to normal operations, such as here. *213 State Farm acknowledged at oral argument that a "mechanical breakdown" contemplates equipment breaking down during operations. But, in State Farm's view, the combine was operating as it rolled downhill. State Farm finds support for that view in a definition of "mechanical breakdown" cited in an unpublished federal circuit court opinion. Am Graphics, Inc. v. Travelers Indem. Co. , 17 Fed. Appx. 787, 791-92 (10th Cir 2001) ("[A] breaking down, wearing out, or sudden loss of ability to function efficiently, as of a machine."). State Farm argues that because the combine was "operating" as it careened down the hill and experienced a "sudden loss of ability to function efficiently," the breakdown was within the policy's exclusion.
The foregoing definitions are not inconsistent with the parties' assumption that a mechanical breakdown is a failure of the machinery during operations. But the definitions do not resolve the parties' competing views of when machinery is "operating." Are operations limited to the normal use of machinery or do they include other movement? To try to answer that question, we turn to the context in which the term "mechanical breakdown" appears in the policy.
The "mechanical breakdown" exclusion is included in a lengthy itemization of excluded "perils":
"1. We do not insure for any loss to the property described in Coverages D, E, or F which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through u. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
"* * * * *
"g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown."
The parties agree that the perils listed in subparagraph g, preceding "mechanical breakdown,"-"wear, tear, marring, scratching, deterioration, inherent vice, latent defect"-generally describe damage within the machinery, and that a mechanical breakdown similarly describes damage within the machinery. Two of the listed perils-"wear, *214 tear"-describe perils resulting from normal operations of the machinery. Two of the listed perils-"inherent vice, latent defect"-refer to damage unrelated to its operations. And three of the listed perils-"deterioration," and "marring, scratching"-would appear to be neutral and to apply to damage either related or unrelated to operations.
Under the interpretive rule of ejusdem generis , a nonspecific or general phrase that appears at the end of a list of items in a statute is to be read as referring only to other items of the same kind as the items in the list. Daniel N. Gordon, P. C. v. Rosenblum , 361 Or. 352, 364, 393 P.3d 1122 (2017) (citing Vannatta v. Keisling , 324 Or. 514, 533, 931 P.2d 770 (1997) ). Because the two listed perils relating to operations-"wear, tear"-describe damage connected to the normal operation of the machinery, the interpretive rule of ejusdem generis might suggest that the peril of mechanical breakdown could similarly be construed to relate to a breakdown during normal operations. But the doctrine is not cleanly dispositive here as to what type of operation the parties' intended for a "mechanical breakdown."
At this point, we are mindful that, in construing an insurance policy, we are to interpret terms according to what we perceive to be the understanding of the ordinary purchaser of insurance. Hunters Ridge Condo. Assn. , 285 Or. App. at 422, 395 P.3d 892. We therefore seek to determine the understanding that plaintiffs would have had of the term "mechanical breakdown" when they bought an insurance policy for "accidental direct physical loss."
As noted, the parties agree that the mechanical breakdown exclusion relates to damage *904 that occurs when the machinery is operating; thus, the question is what meaning an ordinary purchaser of insurance would attribute to "operating." The dictionary definition of "operating" is "engaged in some form of operation : FUNCTIONAL [.]" Webster's at 1581. And "operation" is, in turn, "a doing or performing esp. of action," and "the quality or state of being functional or operative." Id. Machinery is operative if it is "functional." And machinery is "functional" if it is "performing or able to perform its regular function." Id. at 921. Based on those definitions, we conclude that, as commonly understood, *215 machinery is operating when it is performing its regular function. Thus, we conclude, based on that reasoning, that the term "mechanical breakdown," as used in this particular policy, would have been understood by plaintiffs to describe a breakdown in the machinery during its regular functioning, that is, during its normal operation, and not a breakdown that occurs as a result of other movement.
The remaining question is whether the combine was performing its normal operation at the time the damage occurred. The record on summary judgment supports only the finding that, although the combine rolled down the hill, it did so by the force of gravity, not during its regular function. The operator had turned the engine off when the combine tipped up into the ditch, and it was not operating normally as it rolled down the hill. Thus, the breakdown in machinery was not the result of the normal operation of the combine.
State Farm is concerned that consideration of whether the combine was engaged in its normal operation at the time of the damage conflicts with our holding in Montee v. State Farm Fire and Casualty Co. , 99 Or. App. 401, 405, 782 P.2d 435 (1989), rev. den. , 309 Or. 521, 789 P.2d 1386 (1990), where we said that the "cause " of a loss is not relevant to whether the loss consists of the "excluded" kind of damage. In Montee , the walls of the plaintiffs' home cracked and bulged due to settling caused by water flowing from a broken pipe. Id. at 403, 782 P.2d 435. The plaintiffs sought to recover benefits under their homeowner's insurance policy, which excluded coverage of "settling, cracking, shrinking, bulging," contending that the policy only excluded normal or gradual cracking and bulging and did not exclude coverage for cracking and bulging caused by external forces. Id. at 404, 782 P.2d 435. State Farm denied the claim for the reason that the plaintiffs' losses consisted entirely of the losses that were excluded from coverage. We agreed, stating that "[t]he cause of the losses has no bearing on whether they consist of the excluded kinds of damage." Id. at 405, 782 P.2d 435. State Farm contends that, similarly here, how the combine sustained its damage is not relevant to whether the loss is excluded from coverage if it is the type of loss that is expressly excluded from coverage.
*216 But State Farm's argument misses the point: As we have concluded, the loss here was not a "mechanical breakdown" within the meaning of the policy because the breakdown that caused the damage did not occur during the normal operation of the combine. Unlike here, Montee did not involve a dispute about whether the plaintiffs' loss was the type of loss excluded from coverage. In fact, in Montee , we said that the plaintiffs' authorities from other jurisdictions were inapposite, "because the decisive issue in them was whether the causes of the losses brought them within the exclusions." Id . That is also the precise issue here. Plaintiffs contend that the peril they suffered was not a mechanical breakdown within the meaning of the policy. As explained, our reading of the policy leads us to agree with plaintiffs that a mechanical breakdown as used in the policy exclusion is a breakdown in the machinery during its normal operation, and not, as in this case, a breakdown that occurs as a result of other movement. We therefore conclude that plaintiffs' claimed loss is not within the mechanical breakdown exclusion, and that the trial court therefore erred in granting State Farm's motion for summary judgment and in denying plaintiffs' motion for summary judgment.
Reversed and remanded.

The parties agree that, absent application of the exclusion, there is coverage under the policy.