Argued and submitted February 14, affirmed August 16, 2023

BA VENTURES, LLC,
an Oregon foreign limited liability company;
and Pacific Clearvision Institute, PC,
an Oregon professional corporation,
dba Pacific Clearvision Institute,
*Plaintiffs-Appellants,*

*v.*

FARMERS INSURANCE EXCHANGE,
a California corporation,
*Defendant-Respondent.*

Lane County Circuit Court
20CV19356; A176901

535 P3d 323

Plaintiffs appeal from a general judgment of dismissal. In the early weeks of the COVID-19 pandemic, in response to an executive order, plaintiffs delivered surplus personal protective equipment to the state. Plaintiffs claimed that they lost revenue as a result. After their insurance claim was denied, plaintiffs filed a complaint against their insurer, but the trial court determined that an exclusion applied and ruled in favor of the insurer on cross-motions for summary judgment. *Held*: The trial court did not err in determining that plaintiffs' claim was excluded from coverage. The Governmental Action Exclusion excludes coverage for losses caused directly or indirectly by "seizure or destruction of property by order of governmental authority." Plaintiffs construe the word "seizure" too narrowly. An ordinary purchaser of insurance would understand the word as including any taking of property by legal or governmental authority.

Affirmed.

Karrie K. McIntyre, Judge.

Frederick A. Batson argued the cause for appellants. Also on the briefs was Gleaves Swearingen LLP.

Christopher J. Cox argued the cause for respondent. Also on the brief were Jacqueline Tokiko Mitchson, R. Daniel Lindahl, Vanessa O. Wells, Joseph T. Spoerl, Ronald J. Clark, Bullivant Houser Bailey PC and Hogan Lovells US LLP.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

BA Ventures, LLC and Pacific Clearvision Institute, PC (PCVI) (collectively, plaintiffs) appeal from a general judgment of dismissal that was entered after the trial court denied plaintiffs' motion for summary judgment and granted the cross-motion for summary judgment filed by defendant Farmers Insurance Company. Plaintiffs assign error to the court's rulings denying their motion and granting defendant's cross-motion. Plaintiffs filed a claim with defendant for loss of revenue from its ophthalmological facilities during the early weeks of the COVID-19 pandemic. Plaintiffs argued that they were required to deliver surplus personal protective equipment (PPE) to the state and the loss of that property caused their loss of revenue. In its order on the motions for summary judgment, the trial court ruled, among other things, that the insurance policy's Governmental Action Exclusion applied, and that the cause of plaintiff's loss of revenue was an executive order issued by the Governor of Oregon.[1] We conclude that the trial court did not err when it denied plaintiffs' motion for summary judgment and granted defendant's cross-motion. We therefore affirm.

## FACTS

The relevant facts are largely undisputed. Plaintiffs operate three eye care clinics in the Eugene area, and their business consists mainly of nonemergency and elective procedures.[2] In March 2020, when the COVID-19 pandemic began, Oregon's Governor declared a state of emergency. On March 19, 2020, as a result of a shortage of PPE for healthcare providers, the Governor issued Executive Order 20-10 (EO 20-10).[3] It suspended all elective and nonurgent medical procedures that utilized PPE effective March 23, and it directed medical offices to arrange for delivery of their surplus PPE to the state's PPE Coordinator. In compliance

---

[1] At all relevant times, Kate Brown was the Governor of Oregon.

[2] Dr. Balamurali Ambati is the manager and sole member of BA Ventures, LLC, and he is the president of PCVI. BA Ventures owns at least two of the buildings that house the clinics. The insurance policy names both BA Ventures and PCVI as the insureds.

[3] A copy of E0-10 is available at https://www.oregon.gov/gov/eo/eo_20-10.pdf (accessed July 27, 2023).

with EO 20-10, plaintiffs canceled scheduled appointments and procedures and laid off most staff beginning March 23. Dr. Ambati delivered about 100 masks and 200 pairs of gloves to a private hospital on or around April 9, 2020. The clinics continued to see some patients on a limited basis over the following weeks. After purchasing replacement PPE in late April, the clinics resumed services in May 2020 when EO 20-10 was rescinded.

Plaintiffs were insured by an insurance policy purchased from defendant. The pertinent clauses of the insurance policy are contained in the Businessowners Special Property Coverage Form (Coverage Form). Section A of the Coverage Form provides, "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The form describes covered property, property not covered, covered causes of loss, limitations, additional coverages, coverage extensions, and exclusions. Covered property includes "the buildings and structures at the premises," and business personal property, which includes property that "you own that is used in your business." Covered causes of loss consist of "[r]isks of Direct Physical Loss."

Under Additional Coverages, the policy includes coverage for loss of Business Income and Extra Expense:

"f.   Business Income

"(1)   Business Income

"We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. * * *

"* * * * *

"g.   Extra Expense

"(1)   We will pay necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage

to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss."

"Suspension" of operations includes "[t]he partial slowdown or complete cessation of your business activities."[4]

The Civil Authority clause is included in the Additional Coverages section:

"i.   Civil Authority

"We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."

After detailing the coverage parameters, section B of the Coverage Form sets forth a number of exclusions, including the Governmental Action Exclusion:

"B.   Exclusions

"1.   We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

"* * * * *

"c.   Governmental Action

"Seizure or destruction of property by order of governmental authority."

The policy also excludes coverage for "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."[5]

On March 24, 2020, shortly after the Governor issued EO 20-10, Ambati contacted defendant by telephone seeking to file a claim for "business interruption insurance." On March 28 and March 29, defendant sent Ambati two letters denying coverage. Defendant explained that the policy

---

[4] The definition of "suspension" in the Coverage Form was amended in an Endorsement.

[5] The virus exclusion was included in an Endorsement.

did not cover the loss of income because plaintiffs had not experienced a direct physical loss of or damage to property at the insured premises, and the policy excluded coverage caused by or resulting from a virus.

On April 9, 2020, around the same time that Ambati delivered the surplus PPE to a hospital, plaintiffs requested reconsideration of the denial of insurance coverage, asserting that the loss of surplus PPE in response to EO 20-10 was a direct physical loss of property, and that the loss of that property caused the business income losses, due to plaintiffs being unable to safely conduct procedures. Plaintiffs further argued that their loss of business income and extra expenses were covered under the Civil Authority clause, and they argued that the virus exclusion did not apply.

Defendant again denied coverage continuing to invoke the virus exclusion. Defendant argued that the executive order was "not a mandatory seizure order," and that the loss of PPE was a "voluntary donation." In the alternative, defendant argued that "[i]f Oregon is instituting a mandatory confiscation of PPE, seizure of property due to Government Action is excluded under the policy."

In May 2020, plaintiffs filed a complaint against defendant asserting a claim for breach of contract and seeking declaratory relief that the losses were covered under the insurance policy. Plaintiffs alleged business income losses and extra expenses of approximately $235,418.08. Defendant answered and counter-claimed, seeking declaratory relief that the policy did not cover the claimed losses.

Plaintiffs moved for summary judgment. Defendant opposed the motion and filed a cross-motion for summary judgment. After a hearing on the motions, the trial court concluded that the executive order canceling nonessential procedures was the efficient proximate cause of plaintiffs' business losses, and that coverage was precluded by the Governmental Action Exclusion, which was unambiguous.[6] As a result, the trial court denied plaintiffs' motion, granted defendant's motion, and entered a general judgment of dismissal. Plaintiffs appeal.

---

[6] The trial court also determined that the virus exclusion did not apply.

ANALYSIS

"Each party moving for summary judgment has the burden of demonstrating that there are no material issues of fact and that it is entitled to judgment as a matter of law. ORCP 47 C. On review of a trial court's grant of summary judgment, we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the nonmoving party." *TriMet v. Amalgamated Transit Union Local 757*, 362 Or 484, 491, 412 P3d 162 (2018). "Under Oregon law, the initial burden of proving coverage is on the insured." *Employers Insurance of Wausau v. Tektronix, Inc.*, 211 Or App 485, 509, 156 P3d 105, *rev den*, 343 Or 363 (2007). "Conversely, the insurer has the burden of proving that the policy excludes coverage." *Id.*

Plaintiffs argue that their lost business income and extra expenses were covered because the loss of their surplus PPE caused those losses and expenses. The policy provides that defendant "will pay for the actual loss of Business Income [plaintiffs] sustain due to the necessary suspension of [plaintiffs'] 'operations' during the 'period of restoration.' The suspension must be caused by direct physical loss of or damage to the property at the described premises." It also covers extra expenses that would not have been incurred if there had been no direct loss or damage to property. In its order denying plaintiffs' motion for summary judgment and granting defendant's cross-motion, relying on *Naumes, Inc. v. Landmark Ins. Co.*, 119 Or App 79, 82, 849 P2d 554 (1993), the trial court determined that the loss of plaintiffs' surplus PPE was not the cause of plaintiffs' lost business income; instead, the trial court determined that the Governor's order caused that loss.

We agree with the trial court's rulings denying plaintiffs' motion for summary judgment and granting summary judgment in favor of defendant. Even assuming that there is a material issue of fact as to whether the loss of surplus PPE caused some business losses and expenses, the trial court was not required to submit that coverage question to a jury because the Governmental Action Exclusion applies.[7] Under

---

[7] Based on our determination that the Governmental Action Exclusion applies, we do not address in detail plaintiffs' other arguments regarding

that exclusion, the policy excludes coverage for losses that were caused directly or indirectly by "seizure or destruction of property by order of governmental authority."

Plaintiffs argue that a "seizure" occurs only when there is wrongdoing on the part of the person or entity dispossessed, or when there is a use of force in the act of taking possession. Plaintiffs reason that because the government did not take the PPE pursuant to a governmental action indicating some wrongdoing on plaintiffs' part or a use of force, the exclusion should not apply. We are not persuaded that the parties intended for the Governmental Action Exclusion to apply only under those circumstances.

Interpretation of an insurance policy is a question of law, and our task is to ascertain the intention of the parties to the insurance policy. *Holloway v. Republic Indemnity Co. of America*, 341 Or 642, 649, 147 P3d 329 (2006). The parties' intentions are determined from the terms of the policy. *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 307, 985 P2d 1284 (1999). We interpret those terms "according to what we perceive to be the understanding of the ordinary purchaser of insurance." *Coelsch v. State Farm Fire and Casualty Co.*, 298 Or App 207, 214, 445 P3d 899 (2019).

To assist in determining that understanding, we look to dictionary definitions. A "seizure" is "the act of taking possession of person or property by virtue of a warrant or by legal authority." *Webster's Third New Int'l Dictionary* 2057 (unabridged ed 2002). Definitions of "seize" include "to take possession of," to confiscate, and "to take possession of (something) after or by a court order, legislative enactment, or other legal process." *Id.* A "seizure" includes the "confiscation or forcible taking possession (of land or goods)." *Oxford English Dictionary* 898 (2nd ed 1989). "Seizure" has also been defined as "[t]he act or an instance of taking possession

_____

coverage. We briefly note, however, that we are not persuaded by plaintiffs' argument for coverage under the Civil Authority clause. It covers losses "caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises." Here, there is no dispute that plaintiffs were not prohibited from accessing their premises. Plaintiffs argue that the clause applies to partial slowdowns, but the partial slowdown coverage endorsement amended the definition of suspension of operations, not access to the premises.

of a person or property by legal right or process." *Black's Law Dictionary* 1564 (10th ed 2014).

Based on those definitions, we conclude that plaintiffs construe the word "seizure" too narrowly, and that an ordinary purchaser of insurance would not view the word as limited to instances that involve wrongdoing or the use of force. Although a seizure may often involve those elements, they are not necessary components. Instead, an ordinary purchaser of insurance would understand the word more broadly as including any taking of property by legal or governmental authority. *See Horne v. Department of Agriculture*, 576 US 350, 358-59, 135 S Ct 2419, 192 L Ed 2d 388 (2015) ("Virginia allowed the seizure of surplus 'live stock, or beef, pork, or bacon' for the military, but only upon 'paying or tendering to the owner the price so estimated by the appraisers.' And South Carolina authorized the seizure of 'necessaries' for public use[.]" (Citation omitted.)).

In arguing otherwise, plaintiffs discuss *Torres Hillsdale Country Cheese, L.L.C. v. Auto-Owners Ins. Co.*, No. 308824, 2013 Mich App LEXIS 1547 (Ct App Oct 1, 2013), an unpublished opinion in which the Michigan Court of Appeals determined that losses resulting from the confiscation and recall of contaminated cheese products were excluded from coverage. While the court did conclude that the seizures in question satisfied the exclusion clause, the opinion did not go so far as to suggest that the relevant exclusions would not have applied if it had been determined that the cheese-maker was not responsible for the contamination.

Plaintiffs also claim that the inclusion of Civil Authority coverage implies that the Governmental Action Exclusion should be limited to criminal activity or wrongdoing. However, as noted above, the Civil Authority provision covers losses caused by action of civil authority that prohibits access to the described premises. We discern no incompatibility between that coverage provision and the exclusion for losses caused by governmental seizures. *See Schutt v. Farmers Ins. Group*, 129 Or App 401, 405, 879 P2d 1303, *rev den*, 320 Or 272 (1994) ("[A]n ambiguity does not automatically arise when, as here, one clause provides coverage

and another clause excludes that coverage under certain circumstances." (Internal quotation marks omitted.)).

Other jurisdictions addressing insurance claims filed in response to executive orders relating to the COVID-19 pandemic have not limited application of the same Governmental Action Exclusion to instances in which the insured was engaged in wrongdoing or in which the government used force. *See, e.g.*, *MIKMAR, Inc. v. Westfield Ins. Co.*, 520 F Supp 3d 933, 945 (ND Ohio 2021) ("[E]ven assuming the government orders alone caused Plaintiffs' loss, the policies exclude coverage resulting from the '[s]eizure or destruction of property by order of governmental authority[.]'"); *King's Palace, Inc. v. Certain Underwriters at Lloyd's, London*, 558 F Supp 3d 636, 647 n 11 (WD Tenn 2021) ("To the extent the Governmental Action Exclusion * * * contemplate[s] coverage of dispossession or loss of use by excluding governmental seizure, nationalization, or confiscation of property, they contemplate permanent dispossession or loss of use, which has not occurred here."). Similarly, here, an ordinary purchaser of insurance would have understood that the exclusion applied to any loss caused by the taking or confiscation of property by order of governmental authority.[8]

With that understanding of the word "seizure" in mind, we turn to the application of the exclusion. The Governor's order provided:

> "No later than March 27, 2020, hospitals, ambulatory surgery centers, outpatient clinics (including community health clinics and student health centers), dental clinics, and veterinary clinics with surplus PPE supplies shall notify the state's PPE coordinator * * * and arrange for delivery of those surplus supplies to the PPE Coordinator."

---

[8] Plaintiffs argue that the word "seizure" is ambiguous and should be construed against the insurer. We disagree. For the reasons discussed above, it is not plausible to construe the term in a way that limits it to actions involving wrongdoing or the use of force. *See Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470, 836 P2d 703 (1992) ("[A] term is ambiguous in a sense that justifies application of the rule of construction against the insurer *only* if two or more plausible interpretations of that term withstand scrutiny, *i.e.,* continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole." (Emphasis in original.)).

In compliance with that governmental order, a representative of plaintiffs contacted the PPE Coordinator, and, after receiving instructions, Ambati delivered surplus PPE to a hospital in early April 2020. No juror could reasonably conclude that the loss of the surplus PPE did not qualify as a taking of property by order of governmental authority. Because the surplus PPE was seized, we conclude, as a matter of law, that the Governmental Action Exclusion applies. Based on that conclusion, it is not necessary to address defendant's arguments that other exclusions in the policy also apply.

Affirmed.