No. 370 June 5, 2024 27

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

William LOCKNER
and Adam Handwerger,
*Plaintiffs-Appellants,*

*v.*

FARMERS INSURANCE COMPANY OF OREGON,
*Defendant-Respondent.*

Multnomah County Circuit Court
20CV31169; A178057

Shelley D. Russell, Judge.

Argued November 30, 2023.

Nicholas A. Thede argued the cause for appellants. Also on the briefs were Kyle A. Sturm and Foreman Sturm & Thede LLP.

Francis J. Maloney argued the cause for respondent. Also on the briefs was Maloney Lauersdorf Reiner PC.

Before Shorr, Presiding Judge, Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Farmers Insurance denied coverage for damage to plaintiffs' rental property caused by their tenant's personal use of methamphetamine in the insured dwelling.[1] Plaintiffs appeal the Stipulated General Judgment entered in favor of Farmers and against plaintiffs.[2] They assign error to the trial court's order granting Farmers' motion for summary judgment and denying plaintiffs' cross-motion for partial summary judgment. They challenge the court's ruling that the damage is excluded from coverage under the policy's contaminants exclusion because, in their view, the tenant's personal use of methamphetamine constituted "vandalism," which they argue is covered under the policy. We conclude that the trial court correctly determined that coverage was barred under the contaminants exclusion. Accordingly, we affirm.

## I.   STANDARD OF REVIEW

This appeal concerns the trial court's ruling on cross-motions for summary judgment. Because the facts are not disputed, we review the trial court's ruling on those motions for errors of law to determine whether either party is entitled to prevail as a matter of law. ORCP 47 C; *Windmill Inns of America, Inc. v. Cauvin*, 299 Or App 567, 568, 450 P3d 1013 (2019).

## II.   UNDERLYING FACTS

Plaintiffs' tenant and/or her guests smoked methamphetamine inside the insured dwelling, causing property damage in the form of methamphetamine residue. Testing indicated significant levels of methamphetamine discharge, or residue, within the dwelling and in the HVAC system. That residue would not have been present in the absence of the tenant's personal use of methamphetamine inside the dwelling.

---

[1] We do not reach Farmers' cross-assignment of error challenging (1) plaintiff Handwerger's ability to claim an insurable interest in the property, or (2) the scope of plaintiff Lockner's insurable interest, because our resolution of this appeal obviates the need for us to do so. For ease of reference only, we refer to plaintiffs without distinction unless the context requires otherwise.

[2] The stipulated judgment contains the parties' agreement that "the foregoing [judgment] shall not have any impact on the parties' appellate rights."

Lockner filed a claim under his Farmers "all-risk" landlord's insurance policy for the costs associated with removing the residue. Farmers denied coverage under a provision in the policy that excludes coverage for damages "consisting of, or caused directly or indirectly by *** [the] release, discharge or dispersal of contaminants, pollutants, insecticides, or hazardous gasses or chemicals[.]"

## III.   PROCEDURAL BACKGROUND

Plaintiffs sued Farmers for breach of contract. Farmers moved for summary judgment, seeking dismissal on the grounds that coverage was barred by the contaminants exclusion contained within the policy. Plaintiffs opposed Farmers' motion and, in turn, sought partial summary judgment in their favor, arguing that the damage resulted from "vandalism" which is covered under the policy. The trial court agreed that coverage was excluded by the contaminants exclusion and granted judgment in favor of Farmers. Judgment was entered and this appeal followed.

## IV.   THE PARTIES' ARGUMENTS

On motion for summary judgment, Farmers argued that it had no obligation to cover plaintiffs' insurance claim because the insurance policy expressly excluded such coverage. Plaintiffs opposed Farmers' motion by relying on our decision in *Largent v. State Farm Fire & Casualty Co.*, 116 Or App 595, 842 P2d 445 (1992), in which we held that an insurance policy exclusion for "contamination" did not exclude coverage for damage caused by the tenants or their associates "through the operation of an illegal methamphetamine laboratory." *Id.* at 597. Plaintiffs continue to rely on *Largent*, arguing that *Largent* is dispositive because the exclusion in that case is "indistinguishable" from the exclusion here. They contend that whether residual methamphetamine contamination results from the production of methamphetamine or the personal use of methamphetamine, under *Largent*, the contaminants exclusion does not apply to bar coverage. Farmers responds that the contaminants exclusion in this case is distinguishable from the exclusion in *Largent* and that coverage is excluded.

To support their own motion for partial summary judgment, plaintiffs argued, and continue to argue, that the tenant's personal use of methamphetamine constituted vandalism, and that "because vandalism is not excluded, it is therefore covered under the terms of this 'all-risk' policy." They argue that vandalism set into motion the process that resulted in the methamphetamine residue damage, and that coverage is required by operation of the "efficient proximate cause" rule. Farmers does not agree that the personal use of methamphetamine constitutes vandalism, and it resists plaintiffs' invocation of the "efficient proximate cause" rule. It argues that plaintiffs' mischaracterization of the act of smoking methamphetamine as vandalism does not result in coverage because the contaminants exclusion eliminates coverage.

## V.   ANALYSIS

### A.   *The Insurance Policy*

We begin with the insurance policy because the parties' intentions about what the policy covers and what it does not cover are determined from the terms of the policy itself. *Groshong v. Mutual of Enumclaw Ins. Co.*, 329 Or 303, 307, 985 P2d 1284 (1999). We read and interpret the policy terms "according to what we perceive to be the understanding of the ordinary purchaser of insurance." *Coelsch v. State Farm Fire and Casualty Co.*, 298 Or App 207, 214, 445 P3d 899 (2019).

Section I of the policy, entitled "Losses Insured," states that

"[Farmers] insure[s] for accidental direct physical loss to property described in Coverage A and B, except as provided in Section I - Losses Not Insured."

That is a coverage provision that "define[s] the universe of claims that are covered by the policy[.]" *ZRZ Realty v. Beneficial Fire & Casualty Ins.*, 222 Or App 453, 473, 194 P3d 167 (2008). The "Section I - Losses Not Insured" section states, in part:

"[Farmers does] not insure for loss either consisting of, or caused directly or indirectly by:

"*****

"12.   Vandalism *** if the dwelling has been vacant for more than 30 days just before the loss.

"*****

"13.   (f). release, discharge or dispersal of contaminants, pollutants, insecticides, or hazardous gasses or chemicals[.]"

Subsections 12 and 13(f) are exclusions. We will refer to the exclusion under subsection 12 as the "vandalism exclusion" and the exclusion under subsection 13(f) as the "contaminants exclusion." "Under Oregon law, the purpose of an exclusion in an insurance policy is to eliminate coverage that, were it not for the exclusion, would otherwise exist." *ZRZ Realty*, 222 Or App at 473.

The parties agree that the residue caused by the tenant's personal use of methamphetamine constitutes direct physical loss to the insured property. That loss would, thus, be covered under the policy unless coverage is eliminated by a policy exclusion.

B.  *The Vandalism Exclusion*

Farmers did not deny coverage under the vandalism exclusion. The insured property had not been vacant for more than 30 days during the relevant time period and, therefore, even if smoking methamphetamine can be characterized as an act of vandalism, that exclusion would not provide a basis to exclude coverage here. Plaintiffs argue that "because vandalism is not excluded, it is therefore covered ***." They contend that "[u]nder the efficient proximate cause rule, [they] are entitled to coverage because covered vandalism was the predominate and initiating cause of the property damage."[3] But as we will explain, the personal use of methamphetamine is not vandalism and the rule would

---

[3] The efficient proximate cause rule provides that when "a peril specifically insured against sets other causes in motion" that lead "in an unbroken sequence" from the act to the loss, then the "insured peril is regarded as the proximate cause of the entire loss." *Gowans v. N. W. Pac. Indem. Co.*, 260 Or 618, 621, 489 P2d 947, *reh'g den*, 260 Or 618, 491 P2d 1178 (1971). It is a rule of insurance law that can be used to determine the relevant cause of a loss, where multiple causes exist, for the purpose of determining insurance coverage.

not apply here because the record establishes only one relevant cause of damage.

The word "vandalism" is not defined by the policy, but it is otherwise generally defined to mean the "willful or malicious destruction or defacement of things of beauty or of public or private property." *Webster's Third New Int'l Dictionary* 2532 (unabridged ed 2002). The record contains no evidence that plaintiffs' tenant intended to cause damage to the insured dwelling by smoking methamphetamine. Plaintiffs rely on *Hatley v. Truck Insurance Exchange*, 261 Or 606, 494 P2d 426, *adh'd to on reh'g*, 261 Or 606, 495 P2d 1196 (1972), to support their proposition that "vandalism" includes acts that are "reasonably certain or likely to result in damage[.]" But there is no evidence that smoking methamphetamine was an act that plaintiff's tenant knew or should have known was likely to cause property damage. And it is not "obvious that some damage to the grounds or the building would probably result if they were subjected to [the personal use of methamphetamine]." *Id.* at 618. We note also that *Hatley* concerned an insurance policy endorsement that expressly broadened coverage to include loss due to "vandalism and malicious mischief," and that the question was whether certain water damage exclusions applied to bar that coverage. Here, the damage is covered as "direct physical loss to the property" except to the extent that it is excluded by other provisions in the policy. Just as in *Hatley*, the question of whether covered damage is subject to policy exclusions must be answered and we will turn to that next.[4]

## C.   *The Contaminants Exclusion*

We turn to the question of whether the contaminants exclusion applies to exclude coverage. Farmers contends that the plain language of the policy, including in particular the "dispersal of contaminants" exclusion, bars coverage. Plaintiffs do not claim that the language of the contaminants exclusion is ambiguous, and we agree that it is not. And because there is no genuine dispute that the methamphetamine residue is itself a contaminant, it is clear

---

[4] Our conclusion that smoking methamphetamine is not vandalism obviates the need for us to further address plaintiff's argument concerning the efficient proximate cause rule.

that the contaminants exclusion applies. In so concluding, we reject plaintiffs' argument that under *Largent* and subsequent cases,[5] contamination exclusions do not, as a matter of law, exclude "coverage for property damage caused by the release of methamphetamine inside the property."

The *Largent* policy excluded coverage for loss

"consisting of, or directly and immediately caused by * * * 'wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; contamination; smog, smoke from agricultural smudging or industrial operations; settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; birds, vermin, rodents, insects or domestic animals.'"

*Largent*, 116 Or App at 597. (Emphasis omitted.) The comparable exclusion in this case, however, excludes coverage for loss

"consisting of, or caused directly or indirectly by: the release, discharge or dispersal of contaminant[s]."

In *Largent*, we concluded that the exclusionary language was not applicable to the plaintiff's loss due to a tenant's production of methamphetamine, a process that involves "heating and chemical reaction" and results in the "discharge of airborne vapor and particulates[.]" *Id.* at 597. We noted that the exclusion placed "contamination" in a list of other terms such as "wear and tear," that represented gradual processes. *Id.* at 598. We agreed that the exclusion did not apply to the methamphetamine operation because the exclusion barred coverage for loss due to damage that occurs over time, and not to sudden damage such as that which occurs from the production of methamphetamine. *Id.*

The exclusion at issue here is worded differently from the exclusion in *Largent*. It is much more similar to the exclusion we analyzed in *Fleming v. United Services Automobile Assn.*, which likewise excluded coverage for damage caused by the "discharge, dispersal, seepage, migration release or escape of pollutants." 144 Or App 1, 925 P2d

---

[5] Plaintiffs also cite to *Farmers Ins. Co. v. Trutanich*, 123 Or App 6, 858 P2d 1332 (1993) and *Shaffer v. State Farm Fire & Casualty Co.*, 120 Or App 70, 852 P2d 245 (1993).

140 (1996), *rev'd on other grounds*, 329 Or 449, 988 P2d 378 (1999). In *Fleming*, we clarified that the two main factors that guided our decision in *Largent* were that "the word 'contamination' [in *Largent*] was surrounded in the exclusion by other terms, *e.g.*, 'wear and tear,' denoting gradual processes," and that "the single word 'contamination' upon which the insurer in *Largent* relied [did] not communicate anything approximating the particularity of the exclusion [in *Fleming*.]" *Fleming*, 144 Or App at 46.

As in *Fleming*, the exclusion here excludes coverage for loss due to the release or dispersal of contaminants. The exclusion is a stand-alone exclusion and is not part of a broader exclusion for "wear and tear" or other terms that denote gradual processes. It bars coverage specifically for loss "either consisting of or caused directly or indirectly" by the release of contaminants. Importantly, the parties have agreed that plaintiffs' damage was caused by the tenant's personal use of methamphetamine and that the damage consists of the cost incurred to remove the residue that resulted from that methamphetamine use. That loss is excluded by the plain language of the exclusion because the residue is itself a contaminant that was caused, either directly or indirectly, by the release of methamphetamine as the tenant smoked the drug in the insured dwelling.

Finally, we are not persuaded by plaintiffs' assertion that this interpretation of the policy would "eviscerate the principal coverage" the policy provides. Plaintiffs argue that the interpretation of the exclusion advanced by defendant is "unreasonable" because it would apply to exclude coverage for smoke damage, an "obvious and inevitable byproduct[] of fire," which is "indisputably covered." We rejected a similar argument in *Fleming*, noting that any damage directly caused by fire, including smoke damage, would fall under the policy's fire coverage. *Id.* at 6. The damage here consisted of methamphetamine residue caused by the release of contaminants through the smoking of methamphetamine, and coverage is, thus, barred by the contaminants exclusion. The trial court did not err in ruling that Farmers was entitled to prevail as a matter of law.

Affirmed.